# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**KATHARINE C. LIELL**
Liell & McNeil Attorneys
Bloomington, Indiana

**STACY R. ULIANA**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Dec 31 2013, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

WINSTON K. WOOD,                )
                                )
    Appellant-Defendant,        )
                                )
      vs.                     )      No. 53A05-1208-CR-423
                                )
STATE OF INDIANA,               )
                                )
    Appellee-Plaintiff.         )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Jane Spencer Craney, Special Judge
Cause No. 53C03-1008-FC-726

**December 31, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Winston K. Wood appeals his convictions of two counts of Class C felony leaving the scene of a boating accident resulting in the death of a person[1] and one count of Class D felony leaving the scene of a boating accident resulting in serious bodily injury to a person.[2] On appeal, Wood raises the following restated issues:

1. Whether the trial court should have granted Wood's motion for discharge under Indiana Criminal Rule 4(C);

2. Whether the State presented sufficient evidence that Wood did not comply with the duties required of a boater in an accident pursuant to Indiana Code section 14-15-4-1; and

3. Whether Wood's three convictions subjected him to double jeopardy because each conviction arose out of the same act of leaving the scene following a boating accident resulting in injury to or death of a person.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY[3]

On the evening of June 28, 2010, nineteen-year-old Wood was operating his father's Cobalt ski boat on Lake Monroe, near Bloomington, Indiana. Two of his friends, Matthew Holmberg and Michael Marietta, were taking turns wakeboarding. At the same time, James Collier was on his Ranger fishing boat with his wife, Susan, and their three grandsons, Gage, J.T., and Dillon. Wood and Collier were each driving their boats at

---

[1] Ind. Code § 14-15-4-4(3).

[2] Ind. Code § 14-15-4-4(2)(A).

[3] We heard oral argument June 18, 2013, at Trine University, the host site of Hoosier Boys State. We commend counsel for the quality of their oral and written advocacy and thank Trine University and Hoosier Boys State for their hospitality.

about twenty miles per hour, and neither saw the other until the boats collided. The Department of Natural Resources determined the accident was "the result of inattention by both operators." (Tr. at 709.)

Wood's boat went over the top of Collier's boat, damaging Collier's boat and rendering the engine inoperable. J.T. and Dillon were not injured and remained in the boat. Susan was killed and thrown from the boat. Gage was also killed, but his body remained in the boat. Collier suffered a severe cut to his leg and was thrown from the boat.

Holmberg had been wakeboarding behind Wood's boat but had let go of the tow rope, so he was not near the boats when they crashed. Marietta, who was acting as Holmberg's spotter, was thrown from the boat. No one on Wood's boat was physically injured in the crash.

The accident occurred near Harbor Pointe, a private condominium complex. Terry Bawel, who was on the deck of a condominium at Harbor Pointe, saw the boats collide. She testified the collision was so loud that it woke up her eighteen-year-old daughter, Erika. Erika ran out onto the deck while her mother told a neighbor, GiGi Stowe, to call 911. GiGi's call was the first of six received by various 911 operators.[4]

In the aftermath of the accident, Terry and Erika heard crying and shouting and saw debris in the water. Terry heard a voice saying "we have to save her, we have to save her." (*Id.* at 441.) Wood dove into the water and swam toward Susan Collier, but

---

[4] In the order they were received, the remaining calls were made by Marietta, two more by GiGi, one by another Harbor Pointe resident, Jeff Reynolds and a final call by Collier.

she was a "mangled person" with a "torn up face," and Wood "realized it was way beyond anything [he] could do." (State's Ex. OOO at 29.) Wood quickly returned to his boat and joined his friends, who had already climbed back onto Wood's boat.

Wood then drove his boat at top speed to the Fourwinds Marina, which was about two-and-a-half miles away from the scene of the accident. When asked later, Wood said he thought his boat was sinking because there was water in his boat following the accident.[5] During the trip to the Marina, Wood used Marietta's cell phone to call his father. When Wood could not get through, he gave the cell phone to Marietta, who called 911 about six minutes after the accident. Marietta testified he believed it was his idea to call 911, and he could not remember any discussion with Wood about the 911 call. Marietta told the 911 operator he did not know whether anyone had been injured.

A recording of Marietta's 911 call was played for the jury. Loud voices, including Wood's, can be heard in the background. Marietta gave his name to the operator, then told the operator that "we just got hit by a boat," "we started taking on water," and "we're going back to the Fourwinds and the [other] boat, the boat is, the boat is stranded over by, by the dam." (State's Ex. T (audio); State's Ex. W (transcript) at 3-4.) In his brief, Wood describes the 911 call as follows:

---

[5] A reconstruction of the accident indicated the Cobalt struck Collier's Ranger just behind the mid-point and traveled over the left rear of the boat where Susan and Gage were sitting. On impact, Wood's boat "rotated over on its right side somewhat." (Tr. at 684.) At trial, Officer Angela Goldman, an Indiana Conservation Officer, testified that, from what she had learned from the reconstruction, "the Wood boat very well could have . . . taken on water given its positioning and movement as a result of impact." (*Id.* at 587.)

4

Marietta yells at least four times that their boat is taking on water. State's Ex. W p. 3-5. He tells the operator that there is still a family on the boat in the water, he was unsure whether they all are accounted for and that they were shouting. The operator instructs the boys to stay at the marina until "they come get you," to which Marietta responds that Wood is pulling into the dock and that "we're tying up and we're going to go get help from the marina." State's Ex. W, p. 5. The operator again instructs him to "stay at the Fourwinds when you get there," "we have people on the way down there already." State's Ex. W, p. 5. Wood's voice, as identified by Detective Goldman, can be heard in the background instructing Marietta to report "the other boat by the dam," and Marietta responding by reassuring Wood that help was on the way for the other boat. State's Ex T (audio); State's Ex. 000, p. 42.

(Appellant's Br. at 3). Wood, Marietta, and Holmberg stayed at the Fourwinds Marina, as instructed by the 911 operator, and waited one-and-a-half hours for the authorities to arrive.

During the investigation, Officer Angela Goldman, the Indiana Conservation Officer on duty that night, learned that Wood jumped into the water after the collision and swam close to Susan. (Tr. at 587.) When Officer Goldman observed Susan's body, she saw Susan was "[n]early decapitated. The skull cap was completely removed from the head." (*Id.* at 529.) Wood told police that he was horrified, panicked and "really freaked out," and swam back to his boat "as fast as possible and called 911" believing "the most help we could do was to call professional help." (State's Ex. OOO at 29, 32, 33.)

Collier testified that he yelled for help a couple of times, but received no response. Erika and Marietta each testified that they did not hear Collier call for help. Collier, whose leg was injured, swam to his boat, and learned that one of his grandsons was dead

5

in the boat. Collier then swam over to his wife and determined that she too was dead and "there was nothing [he] could do to help her." (Tr. at 362.) When Collier got onto his boat, he covered his grandson's body with one raincoat, and covered the surviving boys with another so "they couldn't see any more than they had to." (*Id.* at 363.) He then yelled at Wood's boat, asking them to save his wife. (*Id.* at 364.) In his call to 911, Collier claimed that, prior to leaving the scene, Wood said "you've got to try to save her." (State's Ex. V (audio); State's Ex. W (transcript) at 13.) At trial, Collier testified Wood said, "[Y]ou save her yourself." (Tr. at 398.)

After Wood's boat left for the marina, Collier was able to pull his wife's body into the boat, and then using his trolling motor, Collier made it to the Harbor Pointe dock. It took Collier about five to ten minutes to get to Harbor Pointe, where he borrowed a cell phone and called 911. The dispatcher with whom he spoke did not know Marietta had also called 911. An ambulance arrived while Collier was still on the phone and took him to the hospital. He was released later that night. Collier later had reconstructive surgery on his injured leg.

During Marietta's 911 call, the operator repeatedly told Marietta, "I need you to stay at the Fourwinds when you get there, okay? And stay at the Fourwinds when you get there." (State's Ex. W at 5.) Because of the lack of communication between the 911 operators, most of the investigators, including the one who interviewed Wood after the accident, did not know Wood and his companions had called 911 or that they had waited at the marina for one-and-a-half hours.

6

About a month later, on August 3, 2010, the State charged Wood with Count I, leaving the scene of a boating accident resulting in Susan's death; Count II, leaving the scene of a boating accident resulting in Gage's death; and Count III, leaving the scene of a boating accident resulting in serious bodily injury to Collier.

Wood filed a motion to dismiss, arguing that Indiana Code section 14-15-4-1, which imposes a number of legal obligations on an operator of a boat involved in an accident or a collision resulting in injury to or death of a person or damage to a boat or other property, was unconstitutionally vague as applied to him. Specifically, he argued:

> At the time [the State] filed the information, the prosecution had all of the facts that demonstrated Wood had attempted to render assistance, that his party had timely notified law enforcement of the accident and thereafter complied with law enforcement instructions. Unfortunately, the prosecution apparently responded to pressure from the media coverage by charging Wood.

(App. at 46.) Monroe Circuit Judge Kenneth Todd held a hearing on the motion but after thirty days still had not ruled. Wood filed a "Praecipe for Failure to Rule on Motion," asking the case be withdrawn from Judge Todd and transferred to the Indiana Supreme Court for appointment of a special judge. (*Id.* at 99.) About four months later, the Supreme Court appointed the Honorable Jane Spencer Craney as Special Judge. On August 1, 2011, she denied Wood's motion to dismiss.

On January 18, 2012, Wood filed a motion for discharge pursuant to Criminal Rule 4(C). The State contended the 119 days that it took to appoint a new judge (from February 16, 2011 to June 15, 2011) should be charged to Wood. Judge Craney denied the motion for discharge, determining: "The time delay caused by Defendant's change of

7

judge motion is charged against him and defense counsel failed to timely object to the Court's jury setting of March 12 to 16, 2012." (App. at 129.) Wood requested two continuances and his trial commenced on June 4, 2012.

Following a five-day jury trial, Wood was convicted of two counts of Class C felony leaving the scene of a boating accident resulting in death and one count of Class D felony leaving the scene of a boating accident resulting in serious bodily injury. The trial court fined Wood $1,000 and sentenced him to six years[6] for each Class C felony, to be served concurrently. For the Class D felony, the trial court fined Wood $1,000 and sentenced him to three years[7] to be served concurrently with the sentences for the Class C felonies.

## DISCUSSION AND DECISION

The statutes applicable to the case before us are Indiana Code sections 14-15-4-1 and 14-15-4-4. The former in pertinent part provides:

> The operator of a boat involved in an accident or a collision resulting in injury to or death of a person or damage to a boat or other property shall do the following:
> > (1) Stop the boat immediately and as close as possible to the scene of the accident.
> > (2) Return to the scene of the accident and remain there until the operator has complied with this section.
> > (3) Give:
> > > (A) the operator's name and address;
> > > (B) a full identification of the boat operated; and

---

[6] Of those six years, Wood was ordered to serve two years in the Department of Correction, two years on home detention, and two years on probation.

[7] Of those three years, Wood was ordered to serve two years in the Department of Correction and one year on home detention.

> (C) the name and address of the owner;
> to the operator of each other boat and each person injured.
>
> . . . .
>
> (5) Provide reasonable assistance to each person injured, including carrying or arranging for carrying each injured person to a physician, surgeon, or hospital for medical or surgical treatment if:
>> (A) it is apparent that treatment is necessary; or
>> (B) the injured person so requests.

Ind. Code § 14-15-4-1. The latter sets forth the penalty for such a violation:

> A person who violates this chapter commits a Class C misdemeanor. However, the offense is:
>> (1) a Class A misdemeanor if the accident or collision results in an injury to a person;
>> (2) a Class D felony if:
>>> (A) the accident or collision results in serious bodily injury to a person; or
>>
>> . . . ;
>> (3) a Class C felony if the accident or collision results in the death of a person.

Ind. Code § 14-15-4-4.

### 1. Criminal Rule 4(C)

Wood was charged and arrested on August 3, 2010. Under Indiana Criminal Rule 4(C), Wood's trial had to begin by August 3, 2011, unless that date was extended due to "a continuance . . . had on his motion," a delay "caused by his act," or if there "was not sufficient time to try him during such period because of congestion of the court calendar." Wood filed a motion for discharge pursuant to Rule 4(C), which the trial court denied.

In deciding whether to grant or deny a motion for discharge, a trial court must sometimes resolve disputed facts, but on other occasions it simply applies the law to

undisputed facts. *Feuston v. State*, 953 N.E.2d 545, 548 (Ind. Ct. App. 2011). Factual findings made by the trial court are entitled to deference, but legal conclusions are reviewed *de novo*. *Id.* Criminal Rule 4 implements the defendant's constitutional right to a speedy trial. *Id.* at 547. Under this rule, the State has an affirmative duty to bring the defendant to trial within one year of being charged or arrested, subject to the listed exceptions. *Id.* at 547-48. The defendant has no obligation to remind the court of the State's duty, nor is he required to take any affirmative action to see that he is brought to trial within the statutory time period. *Id.* at 548. When a defendant moves for discharge, the burden is on the defendant to show that he has not been timely brought to trial and that he is not responsible for the delay. *Id.*

The following dates are relevant to our analysis. Wood's initial Criminal Rule 4(C) deadline was August 3, 2011. On November 3, 2010, Wood filed a motion to dismiss, arguing the statute defining the crimes with which he was charged was unconstitutionally vague as applied to him. Judge Todd held a hearing on the motion on January 12, 2011, and thirty days later had still not ruled. On February 16, 2011, pursuant to Indiana Criminal Rule 15 and Indiana Trial Rule 53.1, Wood filed a "Praecipe for Failure to Rule on Motion," requesting the Clerk of the Monroe Circuit Court "withdraw submission of this cause from [Judge] Todd and transfer this cause to the Indiana Supreme Court for the appointment of a special judge." (App. at 99.) About 119 days later, on June 15, 2011, the Indiana Supreme Court appointed Judge Craney as Special Judge. She denied Wood's motion to dismiss on August 1, 2011.

10

On August 26, 2011, Judge Craney set trial to commence on October 24, 2011, as a first choice jury trial. About a week later, on September 6, 2011, defense attorneys James Voyles and Frederick Vaiana each filed an appearance to replace Wood's prior counsel.

On September 27, 2011, Judge Craney, pursuant to an agreement reached by the parties at Wood's final pretrial hearing, entered an order that provided in pertinent part, "[d]efense will be filing a continuance of the jury trial now set for October 24 through 28, 2011," and that "[i]f a continuance is filed by the defense, it will be granted by the Court and the jury trial will be reset on March 12 through 16, 2012 as a first choice setting." (*Id*. at 115.) Wood filed the aforementioned motion to continue on October 5, 2011, and as promised, Judge Craney entered an order on October 7, 2011, granting Wood's motion to continue and resetting the jury trial for March 12 through March 16, 2012. (*Id*. at 116, 120.)

On January 18, 2012, Wood filed a motion for discharge pursuant to Criminal Rule 4(C), but he did not file a memorandum in support thereof. The State filed a response to Wood's motion contending the 119 days that it took to appoint the special judge should be charged to Wood. (*Id*. at 125.) Judge Craney, agreeing with the State's reasoning, denied Wood's motion for discharge on February 1, 2012, finding Wood's change of judge motion was charged against him and Wood did not timely object to setting the jury trial for March 12, 2012. Wood filed a motion to reconsider, which was denied.

11

On February 17, 2012, Wood filed a motion to continue the trial from March 12, 2012 to June 4, 2012, which the trial court granted. Wood was convicted following a five-day jury trial, which commenced on June 4, 2012.

"[T]he focus of Criminal Rule 4 is not fault; it is to ensure early trials." *Curtis v. State*, 948 N.E.2d 1143, 1150 (Ind. 2011). Criminal Rule 4(C) places an affirmative duty on the State to bring a defendant to trial within one year, and the defendant is under no obligation to remind either the State or the trial court of the State's duty. *Gibson v. State*, 910 N.E.2d 263, 266 (Ind. Ct. App. 2009). Although a defendant has no duty to object to the setting of a belated trial date if the setting occurs after the year has expired, a defendant waives the right to be brought to trial within one year by failing to raise a timely objection if the trial court, acting during the one-year period, schedules the trial beyond the limit. *Id.* at 267.

Wood's motion for discharge stated only "Defendant, by counsel, hereby moves for discharge pursuant to Ind. Criminal Rule 4(C)." (App. at 123.) This motion was not accompanied by a memorandum in support, and it did not in any other way provide guidance as to which dates should be attributed to him and which should be attributed to the State.

In response to the motion to discharge, the State argued there was no Criminal Rule 4(C) violation because the August 3, 2011, deadline for bringing Wood to trial could be extended by 119 days to November 30, 2011, to account for the period between Wood's February 16, 2011, filing of the praecipe pursuant to Trial Rule 53.1, and the

Supreme Court's June 15, 2011, appointment of the special judge. The State further explained that on October 5, 2011, prior to the November 30 deadline, Wood requested a continuance and agreed to have the trial commence on March 12, 2012, which is outside the Criminal Rule 4(C) deadline.

The trial court determined there was no violation of Criminal Rule 4(C), because the time delay caused by the change of judge motion was chargeable to Wood and because Wood's counsel did not object when, within the Rule 4(C) deadline, the court set the trial to commence on a date past the Rule 4(C) deadline.

The trial court did not err in denying Wood's motion for discharge. Our Indiana Supreme Court recently recognized that "Rule 4(C)'s one-year limitation does not include the time during which trial proceedings have been stayed pending interlocutory appeal." *Pelley v. State*, 901 N.E.2d 494, 499-500 (Ind. 2009), *reh'g denied*. The Court reasoned as follows:

> This Court has previously examined the effect of the State's interlocutory appeal on the period in which a defendant must be brought to trial. In *Martin v. State*, 245 Ind. 224, 228, 194 N.E.2d 721, 723 (1963), the State filed a mandamus proceeding following the trial court's denial of the State's motion for a change of judge. During the course of the mandamus action, the statutory time limit . . . expired. The defendant moved for discharge, arguing that the time for the State's mandamus proceeding could not be attributed to him. We upheld the trial court's denial of the discharge motion, in part because the defendant was the real party in interest in the change of judge, and his attorneys represented the respondent judge in the original action. We also stated that the [time limit] did not apply "where the delay was caused by proceedings in this court." We explained that neither the prosecutor nor the trial judge could control the time required for an appeal, and most appeals would trigger a dismissal, a result that the legislature could not have intended. Following the adoption of our criminal rules, we quoted *Martin* with approval in *State ex rel. Cox v. Super. Ct. of*

13

*Madison County*, 445 N.E.2d 1367, 1368 (Ind. 1983), in holding that Rule 4(B)'s early trial requirement was tolled pending the State's interlocutory appeal of the trial court's ruling on defendant's motion in limine.

We believe that *Martin's* rationale controls here. When trial court proceedings have been stayed pending resolution of the State's interlocutory appeal, the trial court loses jurisdiction to try the defendant and has no ability to speed the appellate process. As a practical matter, applying the Criminal Rule 4(C) one-year requirement to interlocutory appeals would render an appeal by the State impossible because it would in all likelihood trigger a mandatory discharge of the defendant. Accordingly, we conclude that Rule 4(C)'s one-year limitation does not include the time during which trial proceedings have been stayed pending interlocutory appeal.

We note that the time for an interlocutory appeal is excluded from Rule 4(C)'s limitation only when trial court proceedings have been stayed. The trial court and Court of Appeals have discretion to deny a motion to stay if it appears that the State is seeking a stay for improper purposes, or if the appeal presents issues that are not critical to the case.

*Pelley,* 901 N.E.2d at 499-500.

Here, Trial Rule 53.1 resulted in a similar loss of jurisdiction in the trial court. Pursuant to Trial Rule 53.1, when a trial court unreasonably delays in ruling on a matter before it, a party may withdraw the case from the judge and have the matter transferred to the Indiana Supreme Court for appointment of a special judge. Wood filed his Trial Rule 53.1 motion in 2011. At that time, the filing of such motion "*automatically divested the trial court of jurisdiction* to decide the motion or case."[8] 3A Ind. Prac., Rules of Procedure Annotated R. 53.1 (3d ed.) (emphasis added).

---

[8] Effective January 1, 2012, the Indiana Supreme Court substantially rewrote the procedure for withdrawing a matter from the trial judge under Trial Rule 53.1. The new procedure requires the determination whether there has been a delay to first be put before the Executive Director of the Division of State Court Administration.

On February 16, 2011, Wood filed a praecipe to withdraw the submission of the case from Judge Todd pursuant to Criminal Rule 15 and Trial Rule 53.1. Our Supreme Court did not appoint a special judge until June 15, 2011, 119 days later. Neither the prosecutor nor the trial judge could control the time required to appoint a special judge; the delay in the appointment of Wood's special judge was caused by proceedings in our Supreme Court. Following our Supreme Court's reasoning in *Martin* and *Pelley*, in the absence of jurisdiction in the trial court, the Criminal Rule 4(C) one-year trial date was tolled for 119 days during the time period between Wood's filing of the praecipe and our Supreme Court's appointment of a special judge. This pushed the Criminal Rule 4(C) deadline from August 3, 2011 to November 30, 2011.

On October 5, 2011, well before the November 30 deadline, Wood moved to continue the jury trial, citing his new counsel's court schedule and the need for additional time to prepare for trial. Wood's request was granted, and the trial was continued to March 12, 2012. At that time, Wood did not object; instead, he agreed the trial could commence on March 12, 2012, a date outside the Criminal Rule 4(C) deadline. As Wood did not assert a timely objection, he waived his right to be brought to trial within the deadline set by Criminal Rule 4(C). *See Pelley*, 901 N.E.2d at 498-99 (defendant waives his right to be brought to trial within 4(C) period by failing to raise timely objection if, during period, trial court schedules trial beyond limit). The trial court did not err in denying Wood's motion for discharge.

2. <u>Sufficiency of Evidence</u>

When reviewing a claim the evidence is insufficient, we do not reweigh evidence or judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the verdict. *Hyche v. State*, 934 N.E.2d 1176, 1178 (Ind. Ct. App. 2010), *reh'g denied, trans. denied*. This review "respects the jury's exclusive province to weigh conflicting evidence." *Allen v. State*, 844 N.E.2d 534, 536 (Ind. Ct. App. 2006), *trans. denied*. We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*. The factfinder is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe, *Atwood v. State*, 905 N.E.2d 479, 484 (Ind. Ct. App. 2009), *trans. denied*, and is not required to believe a witness' testimony even when it is uncontradicted. *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004).

The Indiana General Assembly has made it a criminal offense for the operator of a boat involved in an accident to leave the scene of the accident before exchanging information and providing reasonable assistance to the injured. Ind. Code § 14-15-4-4. Specifically, to convict Wood, the State had to prove Wood did not stop his boat "*immediately* and as close as possible to the scene of the accident," Ind. Code § 14-15-4-1 (emphasis added), and did not *"return to the scene of the accident and remain there,"* *id.* (emphasis added)*,* until he gave the information required to identify himself, the boat, and the boat's owner; and provided "reasonable assistance to each person injured,

16

including carrying or arranging for carrying each injured person to a physician, surgeon, or hospital for medical or surgical treatment" if it is apparent that treatment is necessary or the injured person so requests. *Id.* The legislature has also made it a criminal offense for the boat operator not to:

> (1) Give notice of the accident to:
> (A) the office of the sheriff of the county;
> (B) the nearest state police post; or
> (C) the nearest conservation office;
> *immediately and by the quickest means of communication*.

Ind. Code § 14-15-4-2 (emphasis added). Both of these statutes require an operator to take "immediate" action.

When someone flees an accident scene, injured persons might be left without help and without any means to identify the driver of the other vehicle. The intent behind a statute that prohibits leaving the scene of an accident is to provide prompt aid for persons who are injured and to sufficiently establish the identity of the parties so that they and police authorities may know with whom to deal in matters growing out of the accident. *See Armstrong v. State*, 848 N.E.2d 1088, 1095 (Ind. 2006) (addressing Ind. Code § 9-26-1-1, which imposes a number of duties on the driver of a motor vehicle involved in an accident that results in the injury or death of a person or the entrapment of a person in a vehicle), *cert. denied sub nom. Armstrong v. Indiana*, 549 U.S. 996 (2006).

Wood contends his "decision to get help by going to the marina while calling 911, when considered in the totality of the emergency, satisfied his duties as a boater in an accident." (Appellant's Br. at 10.) Our legislature did not include consideration of the

17

"totality of the emergency" in the definition of this offense or as a defense to the specific statutory obligations it imposed. Thus, we must reject Wood's suggestion that we consider the evidence within that framework, and we must decline Wood's invitation to reweigh the evidence or to consider evidence other than that most favorable to the judgment.

The facts most favorable to the verdict would permit the jury to conclude Wood did not comply with the duties statutorily imposed on a boat operator after an accident because he did not "[p]rovide reasonable assistance to each person injured, including carrying or arranging for carrying each injured person to a physician, surgeon, or hospital for medical or surgical treatment if . . . it is apparent that treatment is necessary." Ind. Code § 14-15-4-1. There was evidence Wood called only his father after the collision, and that the 911 call was made by Marietta. Marietta testified he believed it was his idea to call 911, and he could not remember any discussion with Wood about the 911 call. That would permit the jury to infer Wood did not instruct Marietta to make the call and the 911 call cannot be attributed to Wood. There was evidence Collier yelled to the people in Wood's boat, asking them to save his wife, and in his call to 911, Collier claimed that, prior to leaving the scene, Wood said "you've got to try to save her." (State's Ex. V (audio); State's Ex. W (transcript) at 13.) At trial, Collier testified Wood said, "[Y]ou save her yourself." (Tr. at 398.)

The 911 dispatcher stated that help was on its way and repeatedly ordered Wood and his passengers to remain at the Fourwinds, *i.e.*, to not return to the open water where

18

the accident had occurred. We acknowledge Wood and his passengers complied with the instructions of the 911 dispatcher and waited at the Fourwinds for an hour and a half before the authorities arrived, but there was no evidence Wood satisfied the statutory requirements to remain at the scene and give to "the operator of each other boat and each person injured," Ind. Code § 14-15-4-1, the information required to identify himself, the boat, and the boat's owner. There was sufficient evidence presented at trial to permit Wood's convictions.

### 3. Double Jeopardy

We review *de novo* whether a defendant's convictions subjected him to double jeopardy. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005). "A defendant's right to not be put twice in jeopardy for the same offense arises from the United States Constitution and the Indiana Constitution." *Davis v. State*, 691 N.E.2d 1285, 1287-88 (Ind. Ct. App. 1998). Prohibitions against double jeopardy protect against multiple punishments for the same offense in a single trial. *Richardson v. State*, 717 N.E.2d 32, 37 n.3 (Ind. 1999). While there was sufficient evidence Wood violated Indiana Code section 14-15-4-1, Wood's three convictions of leaving the scene of a boating accident subjected him to double jeopardy, as he was punished three times for an act -- leaving the scene of an accident -- he committed only once. Accordingly, only one count of Class C felony leaving the scene of a boating accident can stand, and the other two convictions must be vacated.

In *Nield v. State*, 677 N.E.2d 79 (Ind. Ct. App. 1997), Nield struck and seriously injured two motorcyclists while driving her car. She was convicted of two counts of failing to stop after an accident involving injury or death, as defined by Indiana Code section 9-26-1-1. Nield argued her two convictions subjected her to double jeopardy because both convictions stemmed from one accident and therefore violated the prohibition against multiple punishments for the same offense.

Indiana Code section 9-26-1-1, like Indiana Code section 14-15-4-1, imposes certain enumerated duties on an operator who is involved in an accident, including immediately notifying law enforcement authorities that the accident occurred; providing information regarding the driver's identity, license and vehicle; and rendering assistance to persons injured. *Id.* Furthermore, like section 14-15-4-1, the statute in *Nield* was framed in terms of "an accident" rather than injury to a person or damage to a vehicle. We concluded that had the legislature chosen to impose separate duties for each vehicle or person injured, it could have done so. *Id.* Therefore, even though Nield struck two motorcycles and injured two persons, she was involved in only one accident and could not be convicted twice for leaving the scene of that accident. *Id.*

*Nield* controls here. Even though two people died and another was injured, Wood's act of leaving the scene of the boating accident can support only one conviction under Indiana Code section 14-15-4-1. We therefore remand for the trial court to dismiss one Class C felony conviction and one Class D felony conviction and to accordingly resentence Wood and reimburse the fines it imposed for those additional convictions.

20

4.      Problems with Indiana Code chapter 14-15-4

The evidence, when viewed in a light most favorable to the judgment, requires us to uphold Wood's conviction. However, this prosecution has brought to light serious concerns about the statute that criminalizes Wood's behavior. The tragic events on Monroe Reservoir on June 28, 2010, led to two deaths, a serious injury, and traumatic effects on all parties involved. In the course of Wood's trial and this appeal, four judges have examined the facts of the case and the statute defining the charged crimes. While those judges have reached differing conclusions about the proper way to resolve the issues that arise in this case, all have agreed that the statute is problematic.

Observing the requirements of Ind. Code section 14-15-4-1 will, in many emergency situations, require behavior that defies logic,[9] and engaging in innocent, and even advisable, behavior can leave one in violation of the statute. This statute permits no consideration of what is reasonable in any given emergency situation; nor does it permit citizens to engage in any balancing of considerations that arise in typical emergencies and are likely required by other statutes.[10]

The statute does not include a specific intent element, and our appellate courts

---

[9] As required under Indiana Code section 14-15-4-1, Wood stopped at an accident scene that all agree was chaotic. Delaying assistance to victims in order to provide Collier the statutorily-required information about the operator's name and address, a full identification of the boat operated, and the name and address of the owner would presumably have been ill-advised in light of the emergency situation in the aftermath of the collision.

[10] We share the concerns articulated in Judge Kirsch's well-reasoned dissent that application of this statute will in some cases likely render illusory the common-law defense of necessity. However, as we cannot know how the jurors applied the elements of the necessity defense to the facts of Wood's case, we must decline to reverse Wood's conviction on that ground.

have had no occasion to articulate fair warning and ascertainable enforcement standards. That, in some fact situations, will raise due process concerns. *See*, *e.g.*, *State v. Schriver*, 542 A.2d 686, 688-89 (Conn. 1988) (presence of a specific intent element may purge a potentially vague criminal statute of constitutional infirmity, and a facially vague law may comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards).

Indiana Code section 14-15-4-1 requires "[t]he operator of a boat involved in an accident or a collision resulting in injury to or death of a person or damage to a boat or other property shall do" a number of things. As Wood correctly notes, there are no exceptions for emergencies that are likely to arise during the aftermath of an accident on a body of water. Wood asks that we find this statute unconstitutionally vague because "it encourages arbitrary and discriminatory enforcement by criminalizing reasonable choices made in stressful, emergency situations," and it fails "to inform an ordinary person of what conduct is prohibited." (Appellant's Br. at 19, 20.) Wood argues that a strict reading of Indiana Code section 14-15-4-1 will criminalize activities that most would consider innocent, even advisable, responses to an emergency. While we do not find the statute unconstitutionally vague, the facts in the case before us highlight the problems that can arise under the section 14-15-4-1 definition of actions that are criminal when someone subject to the statute is faced with an emergency.

The likelihood there will be an emergency of some kind at the scene of a boating accident triggers a second concern about a conviction under Indiana Code section 14-15-

4-1. Our Supreme Court has held that a boat operator owes a duty of reasonable care to all persons, including passengers on his or her boat. *Clipp v. Weaver*, 451 N.E.2d 1092, 1094 (Ind. 1983). Indiana Code section 14-15-3-3 provides:

> [a] person operating a boat shall operate the boat in a careful and prudent manner, having due regard for the following: (1) the rights, safety, and property of other persons; (2) the conditions and hazards, actual and potential, then existing, including weather and density of traffic; and (3) the possible injury to the person or property of other persons.

Yet, Indiana Code section 14-15-4-1 requires, without exception, a boat operator who is involved in an accident to stop at the scene of the accident, immediately, and to provide information and requested assistance. That wording likely inhibits an operator of a boat from balancing the duty he owes to keep his own passengers safe under Indiana Code section 14-15-3-3[11] with the duty he owes to provide information and assistance to others pursuant to Indiana Code section 14-15-4-1.

Boating accidents give rise to inherently serious and dangerous conditions. Most states have recognized that the operator of a boat involved in an accident owes a dual and sometimes competing duty to his own passengers as well as to those in another boat. Indiana has not. The need to balance these dual considerations is, in general, expressed as follows:

> The operator of a vessel involved in a collision, accident, or other casualty, *so far as he can without serious danger to his own vessel, crew, passengers, and guests*, if any, shall render to other persons affected by the collision,

---

[11] Violation of either section exposes an operator to criminal sanctions; violation of section 14-15-3-3 is a Class C infraction. Ind. Code § 14-15-3-31.

accident, or other casualty *assistance as may be practicable and as may be necessary in order to save them from or minimize any danger caused by the collision*, accident, or other casualty, and also shall give his name, address, and identification of his vessel to any person injured and to the owner of the property damaged in the collision, accident, or other casualty.

625 Ill. Comp. Stat. Ann. 45/6-1 (emphasis added); *see also* Ala. Code § 33-5-25; Ark. Code Ann § 27-101-205; Cal. Harbor & Naval Code § 656; Colo. Rev. Stat. § 33-13-109; Fla. Stat. Ann. § 327.30; Ga. Code Ann. § 52-7-14; Idaho Code Ann. § 67-7027; Iowa Code Ann. § 462A.7; Kan. Stat. Ann. § 32-1177; Ky. Rev. Stat. Ann § 235.250; La. Rev. Stat. Ann. § 34:851.10; Mich. Comp. Laws Ann. § 324.80133; Mont. Code Ann. § 23-2-527; Neb. Rev. Stat. Ann. § 37-1255; Nev. Rev. Stat. § 488.550; N.H. Rev. Stat. Ann. § 270:1-2; N.J. Stat. Ann. § 12:7-34.46; N.M. Stat. Ann. § 66-12-12; N.C. Gen. Stat. Ann. § 75A-11; N.D. Cent. Code Ann. § 20.1-13-08; Ohio Rev. Code Ann. § 1547.59; R.I. Gen. Laws Ann. § 46-22-10; S.C. Code Ann. § 50-21-130; S.D. Codified Laws § 42-8-56; Tenn. Code Ann. § 69-9-210; Texas Parks and Wildlife Code Ann. § 31.104; Utah Code Ann. § 73-18-13; Va. Code Ann. § 29.1-739; Vt. Stat. Ann. tit. 23, § 3313; Wash. Rev. Code Ann. § 79A.60.200; W.Va. Code Ann. § 20-7-18; Wyo. Stat. Ann. § 41-13-105.

In most other states, the operator of the vessel is obliged to provide assistance only "so far as he can without serious danger to his own vessel, crew, passengers, and guests" and "must render to other persons affected by the collision, accident, or other casualty assistance as may be practicable and as may be necessary in order to save them from or minimize any danger caused by the collision, accident, or other casualty." *E.g.*, 625 Ill.

Comp. Stat. Ann. 45/6-1. These guidelines enable the boat operator to appropriately balance his conflicting duties. More importantly, this language allows a jury to consider emergency conditions as an element of the crime, and not merely as a defense. The Indiana statute does not permit that balancing and those considerations, and Wood's conviction must therefore be affirmed.

## CONCLUSION

Denial of Wood's motion for discharge pursuant to Indiana Criminal Rule 4(C) was not error. There was sufficient evidence Wood violated Indiana Code section 14-15-4-1, but Wood's three convictions, arising as they did from one incident of leaving the scene, subjected him to double jeopardy. We accordingly vacate two of his convictions, one of the Class C felonies and the Class D felony, and remand to the trial court with instructions to refund, the fines imposed for the vacated convictions.

Affirmed in part, reversed in part, and remanded.

BAKER, J., concurs.

KIRSCH, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

WINSTON K. WOOD,                                    )
                                                   )
      Appellant-Defendant,                         )
                                                   )
          vs.                                    )          No. 53A05-1208-CR-423
                                                   )
STATE OF INDIANA,                                  )
                                                   )
      Appellee-Plaintiff.                          )

**KIRSCH, Judge,** *dissenting.*

I respectfully dissent.

As my colleagues note in Judge May's majority opinion, the tragic events on Monroe Reservoir on June 28, 2010 led to two deaths, a serious injury, and traumatic effects on all parties involved. In the course of the trial of the underlying cause and this appeal, four judges have examined the facts of the case and statute upon which it turns. All four judges have agreed that the statute is problematic, but they have reached different conclusions as to the result.

My colleagues note this case "has brought to light serious concerns about the statute that criminalizes Wood's behavior," that "observing the requirements will, in

many emergency situations, require behavior that defies logic," and that "engaging in innocent, and even advisable, behavior can leave one in violation of the statute." *Slip op*., p. 21. The opinion continues noting that the statute "permits no consideration of what is reasonable in any given emergency," nor "does it permit citizens to engage in any balancing of considerations that are pertinent in emergencies." *Id*.

The trial court recognized that the statute failed to set forth an exception for the situation in which compliance with the statute's provisions would be excused where such compliance was impossible or risked serious safety concerns and attempted to remedy the statutory omission by giving an instruction on necessity, but the trial court's necessity instruction was illusory. Indiana Code section 14-15-4-1 provides that the "operator of a boat *involved in an accident or a collision* resulting in injury to or death of a person or damage to a boat or other property shall do the following . . . ." For the necessity defense to apply under the instruction given by the trial court, the accused must not have *substantially contributed to the creation of the emergency*. Here, it is unchallenged that both Wood and Collier *substantially contributed to the creation of the emergency* by their failure to maintain a proper lookout for other boats in the vicinity. As a result, the necessity defense as outlined in the jury instruction provided no defense for Wood and was illusory.

I believe that our legislature intended the language in the statute to be applied logically and not to bring about an unjust or absurd result. It is unquestioned that Wood claimed that he and his passengers were subject to significant peril and that he acted

reasonably in moving his boat and its passengers to the marina. The statute did not give Wood fair notice that it was forbidden conduct to leave the scene of the accident even if Wood feared for his safety or that of his passengers and that necessity demanded that he leave the immediate accident scene. As our appellate courts have repeatedly said, "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012); *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007); *Lee v. State*, 973 N.E.2d 1207, 1209 (Ind. Ct. App. 2012), *trans. denied*. As a result of such omission, Indiana Code section 14-15-4-1 is unconstitutional as applied.