Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 15 2014, 10:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KEVIN WILD**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDRECE BRYANT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1309-CR-806 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Stanley Kroh, Commissioner
Cause No. 49G16-1112-FD-84913

**April 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Edrece Bryant ("Bryant") appeals his convictions for Class D felony strangulation[1] and Class A misdemeanor domestic battery.[2]

We affirm.

ISSUE

Whether the State produced sufficient evidence to convict Bryant of Class D felony strangulation and Class A misdemeanor domestic battery.

FACTS

Bryant and Iman Covington ("Covington") were married from 1996 until 2008 and had four children together. At the time of the trial, their children were nineteen, seventeen, fifteen, and nine years old. Although their marriage ended in 2008, Covington and Bryant continued to communicate after their divorce, and Bryant stayed at Covington's house three times between November of 2010 and November of 2011.

On November 26, 2011, Bryant called Covington "consistently" throughout the morning. (Tr. 12). Covington answered "one or two" of Bryant's calls and found that he was "enraged" and "screaming [and] yelling" because he wanted to get back together with her, but she did not feel the same way. (Tr. 12). As a result of Bryant's anger, Covington told him not to call her anymore and avoided the rest of his calls.

Early that afternoon, Covington began to take a nap. Around thirty or forty-five minutes into her nap, Covington awoke to discover Bryant straddling her. His hands were around her neck and cutting off her air supply so that she could not breathe.

[1] Ind. Code § 35-42-2-9.

[2] I.C. § 35-42-2-1.

2

Covington tried to get Bryant off of her, and he began to hit her arms and her face. In total, Bryant hit her around "ten to fifteen times," both with open and closed fists. (Tr. 20). When Bryant removed his hands from Covington's neck to hit her, she began to scream, and her four children, who were upstairs, heard her and came downstairs. One of Covington's daughters thought that Covington's voice sounded "like a hurt scream . . . like she needed help." (Tr. 76). Bryant stopped hitting Covington when the children appeared. Their eldest son asked Bryant to get off of Covington and leave, but Bryant did not do so. Instead, he told all of the children to leave. The children would not leave, and eventually Covington was able to go upstairs. In the bathroom, she looked into a mirror and saw that both of her eyes were black and pink. Her lower body was also "sore" and "bruised," and her throat was "tight." (Tr. 23).

One of Covington's daughters followed her upstairs and called 9-1-1. Covington reported what had happened to the police, talking in a whisper because she was worried that if Bryant heard her, he would "hurt [them]" or "finish [her]." (Tr. 26). Shortly thereafter, police officers arrived, and Bryant saw the officers and ran away. After their arrival, the officers interviewed Covington and photographed her injuries. In the photographs, Covington had two black eyes, as well as bruising and swelling around her mouth, cheeks, neck, and arms. She also had scrapes on her arms.

On December 5, 2011, the State charged Bryant with Count I, Class D felony residential entry; Count II, Class D felony domestic battery in the presence of a child; Count III, Class D felony battery on a family or household member; Count IV, Class D felony strangulation; Count V, Class A misdemeanor domestic battery; Count VI, Class

3

A misdemeanor battery; and Count VII, Class D felony battery.[3] On August 15, 2013, the trial court held a bench trial. At the conclusion of the presentation of evidence, it found Bryant not guilty on Count I but guilty of the remaining counts. Due to double jeopardy concerns, the trial court entered judgments of conviction for only Count II, Class D felony domestic battery in the presence of a child, and Count IV, Class D felony strangulation.

Subsequently, on September 5, 2013, the trial court held a sentencing hearing. At the hearing, the trial court revised Bryant's convictions and found him not guilty of Counts I, II, and III. The trial court still found that Counts VI and VII violated double jeopardy, so it entered judgments of conviction on only Count IV, Class D felony strangulation, and Count V, Class A misdemeanor domestic battery. At the conclusion of the hearing, the trial court sentenced Bryant to three (3) years for the Class D felony strangulation conviction, with 545 days executed in community corrections and 545 days suspended to one year of probation, and one (1) year for the Class A misdemeanor domestic battery conviction, to be served concurrently to the sentence for Count IV. Bryant now appeals. We will provide additional facts as necessary.

DECISION

Bryant argues on appeal that the State did not provide sufficient evidence to prove beyond a reasonable doubt that he committed either Class D felony strangulation or Class A misdemeanor domestic battery. The standard of review for a sufficiency of the

---

[3] For purposes of clarity, we will refer to this charge as Count VII. Bryant's charging information lists it as Part II of Count VI.

4

evidence claim is that this Court should only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied.* We do not reweigh evidence or judge the credibility of witnesses. *Id.* at 213. In addition, we only consider the evidence most favorable to the judgment and the reasonable inferences stemming from that evidence. *Id.*

Under Indiana Code § 35-42-2-9, a person commits Class D felony strangulation if that person "in a rude, angry, or insolent manner, knowingly or intentionally: (1) applies pressure to the throat or neck of another person; or (2) obstructs the nose or mouth of the another [sic] person; in a manner that impedes the normal breathing or the blood circulation of the other person." Under Indiana Code § 35-42-2-1, a person commits Class A misdemeanor domestic battery if that person "knowingly or intentionally touches another person in a rude, insolent, or angry manner" that "results in bodily injury" to the other person.

Bryant challenges both of his convictions on the premise that Covington's testimony was not credible. He points to several alleged inconsistencies between her testimony and the testimony of the other witnesses. For instance, Covington testified that when her children came downstairs, Bryant was still straddling her, yet all of the children testified that Covington and Bryant were sitting up together on the bed. Also, Covington testified that the children did not go back upstairs when Bryant told them to do so, but one of their daughters and their son testified that they did go back upstairs. Bryant also describes Covington's testimony as internally incongruent because she testified that she

5

"was just a little . . . shook up," yet she later testified that she whispered on the phone to 9-1-1 because she feared that Bryant would "try to finish [her]." (Tr. 23, 26).

Additionally, Bryant notes incongruities in the evidence, such as the fact that Covington claimed she could not breathe or talk, yet there was swelling on the side and back of her neck instead of the front where her trachea and larynx were located. He also claims that Covington always had dark circles under her eyes and could have had puffy eyes from merely crying. Finally, he argues that the bruises on Covington's arms did not occur in the places where they would have occurred if she had attempted to block his hits, as she testified.

These are not all of Bryant's arguments regarding the alleged inconsistencies in the record. However, we need not address any of these arguments or the remainder because, as we stated above, we may not reweigh the evidence or judge the credibility of witnesses when reviewing the sufficiency of the evidence. *See Perez*, 872 N.E.2d at 213. The factfinder is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe. *Wood v. State*, 999 N.E.2d 1054, 1064 (Ind. Ct. App. 2013), *trans. denied*. We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*. at 1063-64.

Here, there was probative evidence to support both of Bryant's convictions. With respect to his Class D felony strangulation conviction, Covington testified that when she woke up from her nap, Bryant had his hands around her throat and was cutting off her air supply so that she could not breathe. As a result of these actions, Covington's neck was

6

bruised, and it hurt her to talk.  With respect to Bryant's Class A misdemeanor battery, Covington testified that Bryant hit her "ten to fifteen times," both with open and closed fists." (Tr. 20).  Consequently, she had two black eyes, as well as bruising and swelling around her mouth, cheeks, neck, and arms.  In light of this evidence, we conclude that there was sufficient evidence for the trial court to find Bryant guilty of both offenses.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.