

**FILED**

Oct 26 2017, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Ruth Ann Johnson | Curtis T. Hill, Jr. |
| Victoria L. Bailey | Attorney General of Indiana |
| Marion County Public Defender | |
| Appellate Division | Angela N. Sanchez |
| Indianapolis, Indiana | Deputy Attorney General |
| | Indianapolis, Indiana |

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Edmonds, | October 26, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A05-1703-CR-400 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable Grant W. Hawkins, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 49G05-1506-F3-20232 |

**May, Judge.**

[1] Matthew Edmonds appeals his convictions of one count of Level 3 felony resisting law enforcement resulting in the death of another person[1] and two

---

[1] Ind. Code § 35-44.1-3-1 (2014).

counts of Level 5 felony resisting law enforcement resulting in serious bodily injury to another person.[2]  He asserts the State did not present sufficient evidence he was still resisting law enforcement when he caused death and serious bodily injury.[3]  We affirm in part, reverse in part, and remand.

## Facts and Procedural History

On the morning of June 8, 2015, Edmonds was observed shoplifting in the Beech Grove Wal-Mart.  The Asset Protection Manager notified the police of the theft after Edmonds left the store.  In response to a police dispatch, Beech Grove Police Officer Josh Hartman went to the Wal-Mart parking lot and identified the vehicle Edmonds had entered.  Beech Grove Police Officer Darrin McGuire also responded to the dispatch, but he waited outside the Wal-Mart parking lot.  After Officer Hartman pulled in behind Edmonds' vehicle, but before Officer Hartman could activate his lights and siren, Edmonds drove away "at a high rate of speed."  (Tr. Vol. II at 124.)

Both officers pursued Edmonds with their police lights and sirens activated. Edmonds was traveling at "seventy-five, 80," (*id.* at 127), miles per hour in a forty mile-per-hour zone, running red lights, and driving on the wrong side of the streets.  As they approached a hill with a blind spot, the officers turned off

---

[2] Ind. Code § 35-44.1-3-1 (2014).

[3] Edmonds filed a motion for leave to file an amended brief.  However, as we *sua sponte* address the concerns raised in that motion, we deny his motion by separate order.

their lights and sirens but continued to watch "in case [Edmonds] hit somebody else . . . to provide safety until the medics get there[.]" (*Id.* at 129.)

[4] On the other side of the hill, Indianapolis Metropolitan Police Department ("IMPD") Lieutenant Donald Bender, who had been monitoring the communications regarding the chase, saw Edmonds and, activating his lights, started to follow him. Officers Hartman and McGuire followed suit once they cleared the hill. Shortly after, however, they encountered a school bus and again terminated the chase as too dangerous to the public.

[5] The officers momentarily lost track of Edmonds but continued to search for him. Edmonds "came out of the alleyway and almost t-boned [IMPD Officer William Bueckers]." (*Id.* at 192.) Edmonds accelerated away from Officer Bueckers. Without speeding or activating his lights and siren, Officer Bueckers followed Edmonds. Officer Bueckers estimated Edmonds was going "80, 90 miles an hour at least." (*Id.* at 196.)

[6] Other officers had lined up on Edmonds' projected trajectory to attempt to keep the streets clear and avoid the possibility he might harm others. However, Edmonds ran a red light and hit a truck in the intersection. Edmonds exited his vehicle and ran away on foot. IMPD Sergeant David Gard witnessed Edmonds hit the truck and leave his vehicle. Sergeant Gard intercepted Edmonds as he "jumped over the fence and fell right in front of [Sergeant Gard's] car." (Tr. Vol. III at 17.) Sergeant Gard ordered Edmonds "to get on the ground." (*Id.*) Eventually, Edmonds complied and was taken into custody.

[7] Donna Niblock, the driver of the truck, was killed when Edmonds hit her truck. Her daughter, Ladonna, and grandson, Johnathan, were seriously injured. The State charged Edmonds with nine other charges, in addition to the three resisting law enforcement charges, including: Level 5 felony reckless homicide,[4] Level 5 felony driving while suspended resulting in the death of another,[5] two counts of Level 6 felony driving while suspended resulting in bodily injury,[6] Level 5 felony failure to remain at the scene of an accident with death,[7] two counts of Level 6 felony failure to remain at the scene of the accident with injury,[8] Class A misdemeanor theft,[9] and Class B misdemeanor failure to remain at the scene of an accident.[10] The jury found him guilty of all charges.

[8] After the jury returned, Edmonds filed a motion for judgment on the evidence on the three charges of driving while suspended because the State did not present sufficient evidence to support the jury verdict. The trial court dismissed those charges. The trial court merged the charge of Level 3 felony resisting law enforcement causing the death of another person with the charge of Level 5 felony reckless homicide. Edmonds was sentenced to an aggregate term of

---

[4] Ind. Code § 35-42-1-5 (2014).

[5] Ind. Code § 9-24-19-3 (2015).

[6] *Id.*

[7] Ind. Code § 9-26-1-1.1(a)(2) (2015).

[8] *Id.*

[9] Ind. Code § 35-43-4-2 (2014).

[10] Ind. Code § 9-26-1-1.1(a)(1)(B) (2015).

twenty-five years on the remaining eight charges: fifteen years for the Level 3 felony resisting law enforcement causing the death of another person; five years each for two Level 5 felony resisting law enforcement resulting in serious bodily injury, to be served consecutive to the Level 3 felony sentence; 180 days for the Class B misdemeanor failure to remain at the scene of an accident, to be served concurrent with the Level 3 felony sentence; and one year each for all remaining counts, to be served concurrent with the Level 3 felony sentence.

# Discussion and Decision

### *Double Jeopardy*

[9]     First, we *sua sponte* address the double jeopardy violation that occurred when the trial court convicted Edmonds of three counts of resisting law enforcement, one resulting in death and two resulting in serious bodily injury.[11]  *See* Ind. Const. art. 1, § 14 ("No person shall be put in jeopardy twice for the same offense.").  We review *de novo* whether a defendant's convictions subjected him to double jeopardy.  *Goldsberry v. State,* 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).  "A defendant's right to not be put twice in jeopardy for the same offense arises from the United States Constitution and the Indiana Constitution."  *Davis v. State,* 691 N.E.2d 1285, 1287-88 (Ind. Ct. App. 1998).  Prohibitions against double jeopardy protect against multiple punishments for the same offense in a

---

[11] This is the sole issue Edmonds sought to raise in his amended brief.

single trial. *Richardson v. State,* 717 N.E.2d 32, 37 n.3 (Ind. 1999), *holding modified by Garrett v. State*, 992 N.E.2d 710 (Ind. 2013).

[10]    In *Wharton v. State*, 42 N.E.3d 539 (Ind. Ct. App. 2015), Wharton was stopped by the police. Based on that traffic stop, Wharton was charged with one count of operating a vehicle while intoxicated and one count of operating a vehicle with an ACE of .08 or more. Under the actual evidence test, we held "both offenses arose from the same action, on the same day, at the same place." *Id.* at 541. Indiana Code section 9-30-5-2(a) makes it a Class C misdemeanor to "operate[] a vehicle while intoxicated," but it "is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person." Ind. Code § 9-30-5-2(b) (2001). Similarly, Indiana Code section 35-44.1-3-1 sets out the crime of resisting law enforcement, and then also enumerates different consequences for which the crime's classification may be enhanced, such as causing death or injury.

[11]    Like in *Wharton*, Edmonds committed one act that was enhanced by the consequences of that action. His three resisting law enforcement offenses, under the actual evidence test, stemmed "from the same action, on the same day, at the same place," *Wharton*, 42 N.E.3d at 541, because for the purposes of the charged incidents, Edmonds ran one light and crashed into one vehicle. *See Armstead v. State*, 549 N.E.2d 400, 402 (Ind. Ct. App. 1990) (distinction made between separate offenses and one offense of resisting law enforcement -"unless more than one incident occurs, there may be only one charge").

[12]     In *Wood v. State*, 999 N.E.2d 1054, 1065 (Ind. Ct. App. 2013), *trans. denied, cert. denied*, Wood left the scene after a boating accident that resulted in two deaths and one person having serious bodily injury, as defined by Indiana Code section 14-15-4-1 (1995). Wood was convicted of all three counts. On appeal, Wood argued his convictions subjected him to double jeopardy because they all stemmed from one accident and therefore violated the prohibition against multiple punishments for the same offense. Because Indiana Code section 14-15-4-1 imposes enumerated duties when a person is involved in an accident and the statute is "framed in terms of 'an accident' rather than injury to a person," *id*. at 1065, we held the statute was adopted for the purpose of punishment of leaving the accident, rather than injury inflicted. Thus, no matter how many people were injured in a single accident, only one conviction of leaving the scene of the accident could be entered.[12] *Wood*, 999 N.E.2d at 1065.

[13]     Although Edmonds killed one person and seriously injured two others, all three counts of resisting law enforcement were charged based on one incident of resisting law enforcement. Likewise, all four counts of leaving the scene of an accident are based on one incident of doing so. As charged, Edmonds may only be punished for one act of resisting law enforcement and one act of leaving the scene of an accident. Conviction on all three counts of resisting law

---

[12] We note this also applies to Edmonds' four charges of failure to remain at the scene of an accident. Thus, while his conviction for Level 5 failure to remain at the scene of an accident resulting in the death of another person may stand, the two charges of Level 6 felony failure to remain at accident resulting in serious bodily injury of another person and the Class B misdemeanor failure to remain at the scene of an accident must be vacated.

enforcement and all four counts of leaving the scene of an accident constitute a violation of Edmonds' protection from double jeopardy and the additional convictions must be vacated. Therefore, we vacate Edmond's two convictions of Level 5 felony resisting law enforcement and three lesser convictions of failing to remain at the scene of an accident. *See Owens v. State,* 742 N.E.2d 538, 545 (Ind. Ct. App. 2001) (when double jeopardy implications exist, reviewing court is to decide the charges to vacate, keeping in mind "the penal consequences that the trial court found appropriate"), *trans. denied.* We remand for the trial court to resentence Edmonds for the remaining crimes. *See Guffey v. State*, 42 N.E.3d 152, 163 (Ind. Ct. App. 2015) (Trial court has "flexibility upon remand, including the ability to increase sentences for individual convictions without giving rise to a presumption of vindictive sentencing, so long as the aggregate sentence is no longer than originally imposed."), *trans. denied.*

### *Sufficiency of Evidence*

[14] When reviewing sufficiency of the evidence in support of a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Binkley v. State,* 654 N.E.2d 736, 737 (Ind. 1995), *reh'g denied.* The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Id.* We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not

required to overcome every reasonable hypothesis of innocence and is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id.* at 147.

[15] Edmonds contends that, because the officers turned their lights and sirens off before he crashed into the truck and killed Niblock, he was no longer resisting law enforcement.[13] He argues the State did not provide sufficient evidence to prove he was.

[16] To prove Level 3 felony resisting law enforcement the State must prove Edmonds "knowingly or intentionally fle[d] from a law enforcement officer after the officer ha[d] . . . identified himself or herself and ordered [Edmonds] to stop." I.C. § 35-44.1-3-1(a)(3) (2014). It is enhanced to a Level 3 felony if "the person operates a vehicle in a manner that causes the death of another person." I.C. § 35-44.1-3-1(b)(3) (2014). To sustain a conviction for resisting law enforcement, the State must prove the person accused of resisting knew he was dealing with an officer. *Conley v. State*, 57 N.E.3d 836, 838 (Ind. Ct. App. 2016), *trans. denied.* "[D]riving a marked police car is sufficient to meet this standard." *Id.* Additionally, law enforcement must issue an order to stop. This order may be accomplished audibly or visually. *Spears v. State*, 412 N.E.2d 81, 83 (Ind. Ct. App. 1980).

---

[13] As we have decided two of the counts must be vacated, we address only the Level 3 felony resisting law enforcement resulting in the death of another person.

[17] The State presented evidence police began to pursue Edmonds in the Wal-Mart parking lot when Officer Hartman pulled up behind Edmonds and Edmonds drove away "at a high rate of speed." (Tr. Vol. II at 124.) Officer Hartman and Officer McGuire, amongst others, had lights and sirens activated at different times to indicate they wished Edmonds to stop.

[18] Although the officers may have broken off the high-speed pursuit due to safety concerns, Edmonds' was still aware officers were in pursuit as evidenced by his actions after he almost wrecked into Officer Bueckers and accelerated as he drove away. In the residential area with a speed limit of thirty miles per hour, Edmonds was traveling "two, three times the speed limit . . . 80, 90 miles an hour at least." (*Id.* at 196.)

[19] At no time did Edmonds act as though he was not fleeing the police. At no time did the police not actively track Edmonds. Lieutenant Bender testified that although the officers had terminated the high-speed pursuit and turned their lights and sirens off, they "were still on the lookout for the vehicle," (Tr. at 154), in the hopes the driver would "[s]low down, stop, abandon the vehicle," (*id.*), and the police would be able to apprehend him. IMPD Officer Joshua Reese testified that following without lights and sirens is an apprehension tactic employed by the police. The tactic involves the officers "hoping [the perpetrator] would get into the area, feel safe now that the lights and sirens have been turned off and bail on foot and run and try and hide in the area." (*Id.* at 248-49.) At that point, officers would attempt to apprehend the perpetrator on foot or with the assistance of a K-9 unit.

[20] A reasonable person would have interpreted the officers' actions, together with Edmonds' continued flight, to indicate Edmonds was aware the officers were still following him and wanted him to stop. These actions continued through Edmonds' running the red light, hitting the truck, killing Niblock, fleeing on foot, and being apprehended by Sergeant Gard. The State presented sufficient evidence to support Edmonds' conviction of resisting law enforcement resulting in the death of another person. *See Spears*, 412 N.E.2d at 83 (sufficient evidence presented to show police presence and valid order to stop when Spears sped away from the scene); *see also Lewis v. State*, 43 N.E.3d 689, 691 (Ind. Ct. App. 2015) (Lewis committed one continuous crime when first fleeing in his vehicle and then on foot).

# Conclusion

[21] As resisting law enforcement is a conduct-based crime rather than a result-based crime, Edmonds may only be convicted of only one count of resisting law enforcement. This holding also applies to the leaving the scene of an accident charges. As the State provided sufficient evidence to support Edmonds' conviction of resisting law enforcement resulting in the death of another person, we affirm that conviction. Therefore, we affirm Edmond's conviction of Level 3 felony resisting law enforcement causing the death of a person and his conviction of Level 5 felony leaving the scene of an accident, vacate the two lesser charges of resisting law enforcement and the three lesser charges of leaving the scene of an accident, and remand to the trial court for resentencing.

Affirmed in part, reversed in part, and remanded.

Barnes, J., and Bradford, J., concur.