Jeffrey **CZOBAKOWSKY**, Appellant (Defendant Below),

v.

**STATE of Indiana**, Appellee (Plaintiff Below).

No. 49A02–9003–CR–143.

Court of Appeals of Indiana, Second District.

Feb. 11, 1991.

William J. Rawls, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Jeffrey Czobakowsky appeals his conviction of resisting law enforcement, a class A misdemeanor,[1] claiming the evidence is insufficient to support his conviction.

We reverse.

---

**1.** IC 35–44–3–3(a)(3) (1988), in relevant part, reads:

> A person who knowingly or intentionally ... flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop; commits resisting law enforcement, a class A misdemeanor....

## ISSUE

Whether the evidence establishes, beyond a reasonable doubt, that a law enforcement officer ordered Czobakowsky to stop.

## FACTS

On October 1, 1989 at approximately 11:30 p.m. police officer Clifford Myers responded to a call of a disturbance in the 800 block of Jefferson Avenue in Indianapolis involving five men and a gun. Officer Myers was driving a marked police car and was wearing his police uniform. Officers Myers described the incident as follows:

Q. Could you explain how you came into contact with the Defendant? That day?

A. As I turned northbound on Jefferson Avenue in the 800 block, inside my marked police vehicle, I observed five subjects in the street. As I got closer, the subjects fled westbound between the houses ... I cut two of the suspects off in the 2000 block of East 9th Street with my police vehicle. I got out and had the subjects get on the ground. At that time I identified one as the Defendant, Jeffrey Czobakowsky.

    *      *      *      *      *      *

Q. Okay, when you pulled up did you verbally identify yourself as a police officer?

A. I did not have a chance to identify myself. They saw my police car, they looked my way, and then they took off westbound between houses[.]

Q. Okay, were your lights on?

A. No, the lights were not on.

Q. Okay. Now at that time, how far away were you from the individuals?

A. Probably fifty feet.

Q. Okay, could you explain the area a little bit?

A. It was lit. There were streetlights there. Porchlights were on. That's about it.

Q. Okay. Now did you see the Defendant at that time?

A. Yes, I did.

Q. As being one of the five individuals?

A. Yes, I did.

Record at 13–15.

Q. Okay, what if anything else happened after you cut them off?

Q. Did you have an occasion to speak with the Defendant at that time?

A. Yes, I did.

Q. Okay, what was said?

    *      *      *      *      *      *

A. He said that he was involved in the disturbance. And that he was scared, so he ran. That's what he said.

Q. Okay, what did you reply?

A. I said, well, I asked him if he knew I was a police officer. At that time he stated that he did not.

Q. He said what?

A. He stated that he did not know that I was a police officer.

Record at 16–17, 20.

## DISCUSSION AND DECISION

The evidence is undisputed that Officer Myers did not audibly order Czobakowsky to stop. Thus, the sole issue on appeal is whether the evidence supports a reasonable fact-finder's conclusion the officer visibly ordered him to stop.

Czobakowsky claims the evidence establishes that in the darkness of night he fled an unidentified pursuer. The State argues there was ample evidence for the fact-finder to reasonably conclude Czobakowsky "was under a visual order to stop." Appellee's Brief at 5.

The standard of review for a sufficiency of the evidence issue is well-settled. This court does not reweigh the evidence or judge the credibility of witnesses. The court considers only the evidence most favorable to the judgment and all reasonable inferences which may be drawn therefrom. If there is evidence of probative value from which a reasonable trier of fact could find the existence of each element of the offense beyond a reasonable doubt the conviction will be affirmed. *Bartruff v. State* (1990), Ind.App., 553 N.E.2d 485.

The evidence does not support the conclusion Officer Myers visually ordered Czobakowsky to stop. It is unreasonable to conclude that the mere approach of an uniformed officer constitutes an order to stop whether the officer, in his patrol car, approaches a group of people in the street or, while on foot, approaches a group of people on the sidewalk, in the street, in a store or in a restaurant. To hold otherwise is to hold that anytime a person observes a police officer approaching the person must either stop or remain in place or risk being guilty of resisting law enforcement.

This is not to say that the approach of a police officer, coupled with other circumstances such as operating the police vehicle's signal lamps, would not support the conclusion a visual order to stop had been given. Other circumstances of a different nature existed in *Spears v. State* (1980), Ind.App., 412 N.E.2d 81. In *Spears,* an off-duty police officer "got out of his car approaching the [stolen] car with his police badge and radio in hand and gun in sight. When he was approximately three feet away from the ·car it sped away in reverse." *Spears* at 82. The *Spears* court found this evidence sufficient to support the fact-finder's conclusion the police officer's actions constituted a visual order to stop. The other circumstances critical to the decision in *Spears* include the approach of the police officer on foot, displaying his police badge, radio and gun, to within three feet of the defendant. Neither these nor similar other circumstances exist here. *Spears* is inapplicable.

Judgment reversed.

SULLIVAN and STATON, JJ., concur.