**Donyea FOWLER, Appellant/Cross Appellee, Defendant,**

v.

**STATE of Indiana, Appellee/Cross Appellant, Plaintiff.**

No. 71A05–0704–CR–200.

Court of Appeals of Indiana.

Jan. 3, 2008.

---

Gregory Paul Kauffman, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Donyea Fowler appeals his convictions, after a jury trial, of auto theft and battery, both as class D felonies. The State cross-appeals the trial court's judgment on the evidence for the charge of resisting law enforcement, as a class D felony.

We reverse and remand.

### ISSUES

1. Whether the trial court erred when it allowed the State to amend the charging information.

2. Whether the trial court erred in granting Fowler's motion for judgment on the evidence.

### FACTS

In April of 2005, law enforcement officers from the U.S. Marshals Service, Indiana State Police, St. Joseph County Sheriff's Department, and the South Bend, Mishawaka, and Elkhart police departments were serving on a joint federal-state fugitive task force, charged with serving arrest warrants. One such warrant was to be served on Donyea Fowler, a fugitive. In addition to the warrant, the task force file contained information useful in matching a suspect's identity to the name on the warrant, including a photo. The warrant and file indicated that Fowler resided on West Linden Street in South Bend.

On April 4, 2005, the task force officers approached the West Linden Street residence; three of the officers, led by Inspector Jack Rosa, entered the residence. The remaining officers maintained a perimeter around the residence. Inside the residence, Inspector Rosa met a woman, later identified as Fowler's mother. Thereafter, Fowler also entered the room. Inspector Rosa then identified himself and the purpose for their presence by stating, "I'm with the U.S. marshals and we're here serving a felony warrant." (Tr. 106). When asked to identify himself, Fowler gave Inspector Rosa a false name and was unable to spell it after three or four attempts. Inspector Rosa also asked for Fowler's social security number; however, Fowler was unable to provide it. Inspector Rosa testified at trial that "it was really evident right after he couldn't spell his last name that this is who we were looking for." (Tr. 107).

Afterwards, Fowler's mother became very upset and Inspector Rosa turned to speak with her, allowing task force officer,

Corporal Early, to continue with the identification process. Corporal Early asked Fowler to step into the kitchen area in order to obtain the correct spelling of Fowler's name, his date of birth, and social security number. Fowler's mother then instructed Fowler to go back to the bedroom and to disregard the officers. Subsequently, Fowler fled into one of the adjoining bedrooms. Several of the officers in the room pursued and ordered him to come back. However, there was no testimony that any officer expressly commanded Fowler to "stop." Another task force officer, Officer Scott Ruszkowski, testified that he heard a "commotion" from behind the bedroom door and believed Fowler was barricading himself in the bedroom. (Tr. 119). Officer Ruszkowski kicked in the door in an attempt to apprehend Fowler. As Officer Ruszkowski was entering the bedroom, he observed Fowler trying to escape through one of the bedroom windows. Sergeant Paul Saros, who was in full police uniform and was securing the outside perimeter, noticed Fowler attempting to escape through the bedroom window and grabbed him, but was unable to hold onto him. Fowler immediately retreated back into the bedroom and slammed the window on Sergeant Saros' arm. Fowler then managed to escape through another bedroom window. Officer Ruszkowski pursued Fowler on foot, but Fowler managed to escape by stealing a SUV, which was later recovered.

On May 13, 2005, the State charged Fowler with resisting law enforcement as a class D felony. The record does not show that the trial court ever set an omnibus date at the conclusion of the initial hearing on May 16, 2005; however, trial was set for December 8, 2005. Apparently, Fowler posted bond, but failed to appear for a pre-trial hearing set for November 16, 2005, and a warrant was issued for his arrest. Subsequently, Fowler was arrested, and on May 9, 2006, the State filed a motion to amend the original charging information by adding charges of auto theft and battery, both as class D felonies. The trial court conducted an initial hearing on May 23, 2006, and over Fowler's objection, the charging information was amended, an omnibus date was set for August 18, 2006, and a new trial date was set for November 16, 2006. On November 16, 2006, a jury convicted Fowler of all three counts. On December 15, 2006, at sentencing, the trial court granted Fowler's motion for judgment on the evidence and reversed his conviction for the charge of resisting law enforcement.

## DECISION

### 1. *Amendment of Charging Information*

Fowler asserts that his convictions of auto theft and battery must be reversed because the trial court erred by allowing the State on May 23, 2006 to amend the initial charging information, which had been filed on May 13, 2005. He argues that by allowing the State to amend the charging information approximately one year after the date of the filing of the original charge, the trial court denied him adequate time in which to prepare his defense. The State counters that Fowler waived his right to challenge the amended information because he did not preserve the issue properly. Specifically, the State argues that Fowler has waived this claim by his failure to provide a transcript of the hearing on the State's motion to amend.

Defendants, as appellants, have a duty to present a sufficient record that supports a claim in order for an intelligent review of the issues. *Miller v. State*, 753 N.E.2d 1284, 1287 (Ind.2001). Furthermore, the burden is on the appellant to show that a timely objection was raised, unless he can show that fundamental error

barred a fair trial from occurring. *Mitchell v. State*, 455 N.E.2d 1131, 1132 (Ind. 1983).

■ Although we agree with the State's contention that the burden of preserving and appropriately raising an issue for appeal is on the appellant, we disagree that Fowler failed to properly preserve his appeal as to the amendments of the charging information. The chronological case summary (CCS) shows that on May 23, 2006, at the end of the initial hearing on the State's motion to amend the charging information, Fowler, by his counsel, objected. Thus, we find that Fowler properly preserved the issue for appeal.

■ Recognizing that Fowler may properly challenge the amended charging information, we begin by noting that the statute governing the amendment of an information was amended in 2007.[1] Because Fowler's trial occurred in 2006, however, we will follow the pre-amended version of the statute. At that time, the relevant provision of the Indiana Code provided:

> (b) The indictment of information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to: thirty (30) days if the defendant is charged with a felony .... before the omnibus date.

Ind.Code § 35–34–1–5.

The Indiana Supreme Court has recently explained that the first step in evaluating the permissibility of an amendment to a charging information is to determine whether the amendment is one of substance or immaterial defect. *Fajardo v. State*, 859 N.E.2d 1201, 1207 (Ind.2007).

*Fajardo* establishes three criteria for determining whether an amendment is one of substance or form: (a) a defense under the original charging information would be equally available after the amendment; (b) the defendant's evidence would be equally applicable to the amended charging information; and (c) the amendment is essential to establishing a valid charge of the crime. *Id.*

Fowler correctly asserts that by permitting the filing of two separate additional felony counts, the amendment to the original charging information was one of substance. In *Fajardo*, the defendant was originally charged with one count of child molesting, as a class C felony. Subsequently, the State sought to amend the charging information by adding a second count of child molesting. *Id.* The *Fajardo* court found that the difference between the statutory elements of a class A and class C felony child molesting offense was sufficient to constitute an amendment of substance because the elements constituting child molesting under the class C felony are different than the class A felony. *Id.* The period of occurrence between the class C felony and the class A felony child molesting charges are also different. *Id.* at 1208. Therefore, the *Fajardo* court found that the defendant's evidence presented at trial would not have been equally available to defend against the class A felony and that the addition of the class A felony count was necessary to establishing a separate charge. *Id.*

Here, the amended charges brought against Fowler are akin to the circumstances in *Fajardo* because auto theft and battery are independent charges. Indiana

---

1. Effective May 8, 2007, Indiana Code Section 35–34–1–5 was amended by Pub.L. 178– 2007 § 1.

Code section 35–43–4–2.5 defines auto theft as

A person who knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with intent to deprive the owner of:

(1) the vehicle's value or use; or

(2) a component part (as defined in IC 9–13–2–34) of the vehicle; commits auto theft, a Class D felony.

Indiana Code section 35–42–2–1 defines battery, as a class D felony as:

A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery.... However, the offense is a Class D felony if it results in bodily injury to a law enforcement officer or a person summoned and directed by a law enforcement officer while the officer is engaged in the execution of his official duty.

Clearly the statutory elements for auto theft and battery are different than those for resisting law enforcement and therefore, require the State to present different evidence to substantiate the different convictions. Therefore, the State's filing of two additional counts was an amendment of substance and fell within the purview of subsection (b) of Indiana Code section 35–34–1–5, relating to amendment of charging information.

Pursuant to statute, and because the amended charges filed in 2006 against Fowler were matters of substance, the State could not amend the initial charging information any later than 30 days prior to the omnibus date. I.C. § 35–34–1–5.

According to the CCS, the trial court failed to set an omnibus date at the May 16, 2005 initial hearing for count I, resisting law enforcement. As a result, regarding the determination and setting of omni-bus dates, we look to Indiana Code section 35–36–8–1, which states:

(a) This subsection applies to persons charged with a felony. *A date, known as the omnibus date:*

*must be set by the judicial officer at the initial hearing;* and

(1) must be no earlier than forty-five (45) days and no later than seventy-five (75) days after the completion of the initial hearing, unless the prosecuting attorney and the defendant agree to a different date.

\* \* \*

(d) Once the omnibus date is set, it remains the omnibus date for the case until final disposition, unless:

(1) the defendant requests a trial within the time limits established by the Indiana rules of criminal procedure for early trial motions;

(2) subsequent counsel enters an appearance after the omnibus date and previous counsel withdrew or was removed....

(emphasis added).

The statute clearly states that the responsibility of establishing an omnibus date resides with the judge or magistrate who presides over the initial hearing. We also note that the only methods for bypassing this date are either through mutual agreement between parties, a formal motion for early trial, or change of counsel based on specific circumstances. *Id.* This interpretation is supported by the long-held view that once an omnibus date is established, neither the State nor the defendant may change it. *See Sappenfield v. State,* 462 N.E.2d 241, 244 (Ind.Ct.App. 1984).

In this case, at the initial hearing on the resisting law enforcement charge, the judicial officer at the hearing should have set an omnibus date that would have occurred

between 45 and 75 days thereof, i.e., between early July and mid-August of 2005. The State would have been allowed to add the auto theft and battery charges 30 days prior to the omnibus date.[2] However, it was not until May 13, 2006, that the State sought to amend the original charging information by amendments that were matters of substance. The law barred such an untimely amendment. *See* I.C. § 35–34–1–5 (previous to amendment by Pub.L. 178–2007 § 1). Accordingly, we conclude that the trial court erred in permitting the amendments, and find that Fowler's convictions for class D felony auto theft and battery, must be reversed.[3]

### 2. *State's Cross–Appeal*

■ The jury returned a verdict of guilty of resisting law enforcement. The State raises on cross-appeal that the trial court erred by granting Fowler's motion for judgment on the evidence, thereby vacating said count on December 15, 2006. The trial court stated that it was granting the motion on the basis that no evidence had been presented to show that the task force officers had ordered Fowler to stop. We disagree.

Indiana Trial Rule 50 states that a motion for judgment on the evidence should be granted, "where all or some of the issues in a case tried before a jury ... are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it." Ind. Trial Rule 50(A). This court has held that a motion for judgment on the evidence should be granted when "there is a total absence of evidence on an issue or evidence susceptible of only one inference which is in favor of defendant. If there is evidence of each element and/or inconsistent possible inferences, the motion should be denied." *State v. Goodrich, Jr.,* 498 N.E.2d 994, 996–97 (Ind.Ct.App.1986), *adopted by State v. Goodrich, Jr.,* 504 N.E.2d 1023, 1024 (Ind.1987).

In this case, Fowler was charged with resisting law enforcement, as a class D felony. According to the charging information, the State had to prove that Fowler

> did knowingly flee from Officer Scott Ruszkowski, a law enforcement officer, to wit ... telling Donyea K.R. Fowler that he was a police officer and ordered Donyea K.R. Fowler to stop, and in fleeing Donyea K.R. Fowler used a vehicle.

(App. 4).

The State was required to prove, beyond a reasonable doubt, at trial, that Fowler was ordered to stop.

Indiana Code section 35–44–3–3, in relevant part, states that a person commits the crime of resisting law enforcement when the person, "knowingly or intentionally flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop. . . . "

■ A police officer's order to stop need not be limited to an audible order to stop. *See Spears v. State,* 412 N.E.2d 81, 83 (Ind.Ct.App.1980). The order to stop may be given through visual indicators. *Id.* Evidence of a proper visual order to stop is based on the circumstances surrounding

---

**2.** We note that post *Fajardo,* that subsection (b) of Indiana Code section 35–34–1–5 states that charging informations may be amended 30 days prior to the omnibus date or "the commencement of trial."

**3.** Because Fowler's convictions as to counts II and III are reversed, we need not address his sufficiency of the evidence argument.

the incident and whether a reasonable person would have known that he or she had been ordered to stop. *Id.*

For example, in *Spears*, an off-duty police officer engaged Spears in a car chase after he had stolen the vehicle. At one point, during the chase, Spears stopped the car; the police officer exited his vehicle and approached Spears, with his badge and radio in hand and his gun in plain sight. Upon seeing the officer approach the vehicle, Spears sped away. Although the officer was not in uniform or in a marked vehicle, the fact that his badge, radio, and weapon were clearly visible would have indicated to a reasonable person that a visible order to stop had been given. *Id.*

On the other hand, in *Czobakowsky v. State,* 566 N.E.2d 87 (Ind.Ct.App.1991), a police officer was responding to a call of a domestic disturbance. As he approached the area in his car, he saw five men walking in the street. As soon as the men saw the officer's vehicle, they turned and fled; at which point, the officer followed in pursuit, subsequently apprehending the defendant. We held that the circumstances in *Czobakowsky* were not sufficient to create a reasonable perception that a visible order had been given to stop because "the mere approach of an uniformed officer" does not automatically imply an order to stop. *Id.* at 89.

Fowler's case is clear. The task force officers, as a group or unit, were at his house in order to serve an arrest warrant, making Fowler a fugitive. The evidence shows that they were readily and easily identifiable as law enforcement officers. Furthermore, the officers were there for a specific purpose, which was clearly conveyed to Fowler, to apprehend a fugitive. Therefore, this is distinguishable from the *Czobakowsky* case, which involved a random encounter with law enforcement. Af-

ter Fowler had fled into the bedroom, the testimony indicates that several of the officers ordered Fowler to come back. Ignoring the commands to come back, Fowler then attempted to flee out a bedroom window; whereupon, Officer Saros tried to apprehend Fowler, but had to let go after Fowler slammed the window down on his arm. These factors would have been more than sufficient to indicate to a reasonable person that Fowler had been ordered to stop. Although the word "stop" was not expressly stated, Fowler had been visibly and audibly ordered not. to flee. To hold otherwise would make the "by visible or audible ... means" language of the statute meaningless. I.C. § 35–44–3–3.

Given the evidence, we find that the trial court improperly found that insufficient evidence existed to convict Fowler of resisting law enforcement. In so doing, the trial court improperly imposed itself as the "thirteenth juror." *See Goodrich, Jr.,* 498 N.E.2d at 996. There was not a total absence of evidence on the issue of Fowler being ordered to stop; nor is the evidence susceptible only to an inference in favor of Fowler. *Id.* at 996–97. Therefore, the trial court erred in granting Fowler's motion for judgment on the evidence.

We hereby reverse Fowler's convictions for auto theft and battery, as class D felonies. We reinstate the jury's verdict of conviction for the class D felony of resisting law enforcement.

Reversed and remanded.

KIRSCH, J., and MATHIAS, J., concur.