Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 26 2012, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN F. HURLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.P., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1205-JV-360 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Geoffrey Gaither, Magistrate
Cause No. 49D09-1112-JD-3473

**November 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

J.P. appeals his true finding of delinquency for resisting law enforcement. J.P. contends there is insufficient evidence to support the true finding because the State failed to prove that he fled or attempted to flee from the police in any way. Finding that the State failed to prove the elements of resisting law enforcement, we reverse J.P.'s true finding of delinquency.

**Facts and Procedural History**

On December 24, 2011, at around 8:30 p.m., Indianapolis Metropolitan Police Officer Bryan Julian was dispatched to investigate a report of two juveniles shooting a BB gun at a house. When Officer Julian approached the house in his marked squad car, he saw two boys, J.P. and D.W., and J.P. was holding what appeared to be a rifle. Officer Julian turned on his spotlight, but he did not turn on his flashing lights or activate his siren. When Officer Julian pulled his squad car over to the side of the road, the two boys ran toward D.W.'s nearby house. Officer Julian then began to exit his squad car, identified himself as a police officer, and yelled at the two boys to stop running. When Officer Julian got out of his car to tell the boys to stop, J.P. was crossing the threshold of D.W.'s house while D.W. was still several steps away from the door. The two boys did not stop running, and Officer Julian located the two boys inside D.W.'s house sitting in a room straight ahead of the front door. The BB gun appeared to have been tossed behind J.P.'s head. Tr. p. 11.

The State filed a petition alleging J.P. a delinquent for committing resisting law enforcement, a Class A misdemeanor when committed by an adult. A fact-finding

2

hearing was held. D.W.'s mother testified at the hearing that the family had a rule that if her children saw a car they did not recognize, they and any of their friends who were with them were to come inside the house. *Id.* at 24. Across the street from D.W.'s house was his family's auto body repair shop that had been burglarized on several occasions, and her rule was due to the burglaries. *Id.* There was also a security camera on the premises of the auto body repair shop that recorded the incident that night. The video was played to the court several times at the denial hearing, but neither party offered the video into evidence.

When Officer Julian was shown the video on cross-examination, he admitted that he was still inside his car with the window and door shut when J.P. was about to cross the threshold into D.W.'s house. *Id.* at 18. One second later, Officer Julian's car door was open but he had not yet exited the car. *Id.* at 18-19. The video showed that J.P. was inside D.W.'s house, and when Officer Julian was asked if J.P. could hear a yell for him to stop at that time, Officer Julian answered, "Possibly." *Id.* at 19. Officer Julian also testified that when he entered D.W.'s home, both J.P. and D.W. were "basically right inside the door" and not attempting to flee the home. *Id.* at 27.

At the end of the State's case, J.P. made a motion to dismiss under Trial Rule 41(B), arguing that the State had failed to meet its burden of proof. The juvenile court denied the motion and entered a true finding. J.P. was placed on probation for three months.

J.P. now appeals.

### Discussion and Decision

Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. We consider only the evidence most favorable to the judgment and the reasonable inferences draw therefrom and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

Resisting law enforcement, a Class A misdemeanor when committed by an adult, was governed at the time of the offense by Indiana Code section 35-44-3-3,[1] and provided in relevant part:

A person who knowingly or intentionally:
\* \* \* \* \*
(3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor.

J.P. contends that the State failed to show that he fled the police in any manner; he argues that he was already inside the house by the time that Officer Julian told him to stop, and he made no further attempt to flee. We agree.

In this case, Officer Julian approached J.P. and D.W. in his squad car with his spotlight on. However, this alone did not require them to stop.

---

[1] Indiana Code section 35-44-3-3 was repealed by P.L. 126-2012 Sec. 53 effective July 1, 2012. It has been replaced by Indiana Code section 35-44.1-3-1, but the former version of the statute was in effect at the time of J.P.'s offense, so we use it for our analysis.

4

> It is unreasonable to conclude that the mere approach of an uniformed officer constitutes an order to stop whether the officer, in his patrol car, approaches a group of people in the street . . . . To hold otherwise is to hold that anytime a person observes a police officer approaching the person must either stop or remain in place or risk being guilty of resisting law enforcement.

*Czobakowsky v. State*, 566 N.E.2d 87, 89 (Ind. Ct. App. 1991). J.P. running into D.W.'s house when Officer Julian approached in his squad car therefore is not sufficient to show that he resisted law enforcement.

Officer Julian testified that he identified himself and yelled for J.P. to stop running. Tr. p. 9. When J.P. did not stop running, Officer Julian ran inside the house and detained him. *Id.* However, on cross-examination, Officer Julian was shown the video of the incident which showed that when J.P. was about to enter the home, Officer Julian was still in his car with the door and window shut. *Id.* at 18. It was not until one second later, when J.P. had entered the house, that Officer Julian opened his car door and was in the process of getting out. *Id.* at 18-19. Officer Julian was asked "Could this young man be hearing you yelling at this point in time in your opinion?" to which Officer Julian answered "Possibly." *Id.* at 19. "Possibly" as the only evidence that J.P. was aware that Officer Julian ordered him to stop is not good enough to satisfy the State's burden that J.P. resisted law enforcement beyond a reasonable doubt. Additionally, Officer Julian testified that when he got inside the home, J.P. was right inside the door and was not attempting to flee. *Id.* at 27.

This is not sufficient evidence to find that J.P. knowingly or intentionally fled from Officer Julian after he identified himself and ordered J.P. to stop. We therefore reverse the juvenile court's true finding of delinquency for resisting law enforcement.

5

Reversed.

BAILEY, J., and BROWN, J., concur.