

FILED

Jul 22 2016, 8:37 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark A. Conley, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 22, 2016 <br><br> Court of Appeals Case No. <br> 79A02-1512-CR-2348 <br><br> Appeal from the Tippecanoe <br> Superior Court <br><br> The Honorable Daniel J. Moore, <br> Magistrate <br><br> Trial Court Cause No. <br> 79D05-1506-CM-600 |

**Najam, Judge.**

## Statement of the Case

[1] Mark A. Conley appeals his conviction for resisting law enforcement, as a Class A misdemeanor, following a jury trial. Conley presents a single issue for our

review, namely, whether the State presented sufficient evidence to support his conviction. We affirm.

## Facts and Procedural History

[2] On June 24, 2015, Conley and Cameron Burger went to a Walmart store in Lafayette to shoplift various items. Walmart asset protection officers Shaun Parkins and Zachary Miller observed that Conley was wearing what appeared to be an empty backpack. Accordingly, Parkins and Miller became suspicious and proceeded to follow Conley and Burger around the store. Parkins and Miller watched as Conley and Burger removed merchandise from the store shelves, put them into Conley's backpack, and proceeded past the cashiers without paying for any of the items. As Conley and Burger moved towards the exits, Parkins, Miller, and a third employee confronted the two men, who proceeded to run out of the store.

[3] Miller had already contacted the Lafayette Police Department to report the suspected shoplifting in progress. And when Conley ran out of the store, Officers Kurt Sinks and Amanda Deckard, both wearing full police uniforms and each driving a marked police car, saw Conley sprint across the parking lot. Officer Sinks drove after Conley and drove into Conley's path. When Conley was approximately ten feet away from his police car, Officer Sinks held up his hand in Conley's direction in a gesture to get him to stop running. Officer Sinks and Conley made eye contact, but Conley darted behind the police car and discarded the backpack he had been wearing. Conley continued running to a nearby hotel parking lot, where Officer Sinks and Officer Deckard ultimately

apprehended him. A subsequent search of Conley's backpack revealed items he and Burger had stolen from Walmart.

[4] The State charged Conley with resisting law enforcement, as a Class A misdemeanor, and theft, as a Class A misdemeanor. A jury found Conley guilty as charged, and the trial court entered judgment and sentence accordingly. This appeal ensued.

## Discussion and Decision

[5] Conley contends that the State presented insufficient evidence to support his resisting law enforcement conviction. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. *Sharp v. State*, 42 N.E.3d 512, 516 (Ind. 2015). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict, and we will affirm the convictions if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

[6] To prove resisting law enforcement, the State had to show that Conley knowingly or intentionally fled from a law enforcement officer after the officer had, by visible or audible means, identified himself and ordered him to stop. Ind. Code § 35-44.1-3-1 (2015). Here, Conley maintains that the State failed to prove either that Officer Sinks identified himself as a police officer or that he had ordered him to stop by visible or audible means. We address each element in turn.

## Identification as Police Officer

[7] This court has held that, to sustain a resisting law enforcement conviction, the evidence must show that the person being arrested had to, at least, "have reason to know" that the person he was dealing with is an officer. *Stack v. State*, 534 N.E.2d 253, 255 (Ind. Ct. App. 1989). And we have held that a police officer wearing a full uniform and driving a marked police car is sufficient to meet this standard. *See, e.g.*, *Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998). Still, Conley contends that, while Officer Sinks was driving a marked police car and wearing a police uniform, "there was no evidence . . . that Conley had an opportunity to view a marking on the side or back of the vehicle as he ran past in the opposite direction." Appellant's Br. at 4-5. But Conley ignores Officer Sinks' testimony that Conley was approximately ten feet away from Officer Sinks' marked police car when Conley made eye contact with Officer Sinks and ran behind the car. We hold that the evidence and reasonable inferences therefrom support a determination that Conley had reason to know that Officer Sinks was a police officer.

## Order to Stop

[8] Conley next contends that Officer Sinks "failed to issue a proper order to stop" when Officer Sinks merely put his hand up in Conley's direction without any other visual or audible indicator. Appellant's Br. at 5.

> A police officer's order to stop need not be limited to an audible order to stop. The order to stop may be given through visual indicators. Evidence of a proper visual order to stop is based on the circumstances surrounding the incident and whether a

reasonable person would have known that he or she had been ordered to stop.

*Vanzyll v. State,* 978 N.E.2d 511, 516 (Ind. Ct. App. 2012) (quoting *Fowler v. State*, 878 N.E.2d 889, 895 (Ind. Ct. App. 2008)).

[9] In support of his contention on appeal, Conley cites to *Czobakowsky v. State*, 566 N.E.2d 87 (Ind. Ct. App. 1991). In that case, a police officer in full uniform and driving a marked police car investigating a disturbance drove up to a group of five men on a street in Indianapolis. As the officer approached the men in his police car, the men dispersed. The officer exited his car and apprehended the defendant on foot. The defendant was charged with resisting law enforcement and convicted on that count. On appeal, we held as follows:

> The evidence does not support the conclusion Officer Myers visually ordered Czobakowsky to stop. It is unreasonable to conclude that the mere approach of an uniformed officer constitutes an order to stop whether the officer, in his patrol car, approaches a group of people in the street or, while on foot, approaches a group of people on the sidewalk, in the street, in a store or in a restaurant. To hold otherwise is to hold that anytime a person observes a police officer approaching the person must either stop or remain in place or risk being guilty of resisting law enforcement.

*Id.* at 89. However, in *Czobakowsky*, we noted further that "[t]his is not to say that the approach of a police officer, coupled with other circumstances such as operating the police vehicle's signal lamps, would not support the conclusion a visual order to stop had been given." *Id.*

[10] In the instant case, Officer Sinks testified that, as Conley ran out of the Walmart and into the parking lot after having committed theft, he: passed directly in front of Officer Deckard's marked police car; made eye contact with Officer Sinks, who was wearing his full uniform and driving a marked police car, as Officer Sinks was holding up his hand in a gesture attempting to get Conley to stop while Conley was approximately ten feet away; and dropped his backpack immediately behind Officer Sinks' police car as he ran past it. Officer Sinks described the encounter as follows:

> Q: Can you describe, where was your hand in relation to the top of the window in your vehicle? I guess would the defendant have been able to see your hand standing ten feet away?
>
> A: Yeah, absolutely. I even had it up high if I'm — if this is the passenger seat of my car and you know my window would be about here, my hand would have been square in the middle of the window.
>
> Q: And then what did he do after you made that hand gesture to him?
>
> A: Continued running around the rear of my squad car.

Tr. at 153. This evidence demonstrates that Officer Sinks did, by visible means, order Conley to stop fleeing. Under these facts and circumstances, we hold that a reasonable person would have interpreted Officer Sinks' hand gesture as a visual command to stop. And Officer Sinks' testimony supports a reasonable inference that Conley saw that gesture but proceeded to run from Officer Sinks.

The State presented sufficient evidence to support Conley's resisting law enforcement conviction.

[11]    Affirmed.

Robb, J., and Crone, J., concur.