## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 25 2019, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bradley S. Boswell
Certified Legal Intern
Joel M. Schumm
IU Robert H. McKinney School of Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lauren Thomas,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 25, 2019

Court of Appeals Case No.
18A-CR-2533

Appeal from the Marion Superior Court

The Honorable Ronnie Huerta, Magistrate

Trial Court Cause No.
49G24-1702-F6-5669

**Baker, Judge.**

[1] Lauren Thomas appeals her conviction for Level 6 Felony Resisting Law Enforcement,[1] arguing that (1) the trial court erred when it denied her motion for a mistrial; and that (2) the evidence was insufficient to support the conviction. Finding no error and the evidence sufficient, we affirm.

# Facts[2]

[2] On February 10, 2017, at around 10:00 p.m., Indianapolis Metropolitan Police Department (IMPD) Officer Darrell Miller was dispatched to the intersection of 38th Street and Fall Creek Parkway to check on a reported abandoned vehicle. Officer Miller arrived at the intersection, evaluated the vehicle, and noticed that most of the front right tire was missing its rubber. He then moved his fully marked police car behind the vehicle and called to have it towed. Officer Miller proceeded to conduct an inventory search and discovered Thomas sitting in the driver's seat, which was completely reclined.

[3] Officer Miller testified that at first glance, Thomas "appeared to be unconscious." Tr. Vol. II p. 34. After knocking on the window and shaking the vehicle to no avail, Officer Miller finally opened the door, which promptly awakened Thomas. He asked her what she was doing and why she was laying in her car by the side of the road. Thomas responded that she was "waiting to

---

[1] Ind. Code §§ 35-44.1-3-1(a)(3), -1(b)(1)(A).

[2] We held oral argument for this case in Indianapolis on June 26, 2019. We thank both parties for their stimulating conversation and willingness to answer our questions.

drive her vehicle home[.]" *Id.* at 35. She also explained that she had just come from a wine and bourbon tasting. During this short conversation, Officer Miller noted the smell of alcohol on her breath. Despite Officer Miller's suggestions that Thomas call someone to come and pick her up, Thomas insisted that she would be driving her vehicle home. Officer Miller informed her that the vehicle was inoperable, that it was blocking traffic, and that it would need to be towed. Still, Thomas refused.

[4] Officer Miller asked Thomas for her driver's license, which she willingly gave to him. Officer Miller then told Thomas to "sit tight" and that he would "be right back with her." *Id.* at 57. Officer Miller returned to his police car and ran a search, discovering that Thomas's license was suspended with a prior conviction.

[5] While Officer Miller was conducting this search, Thomas began driving eastbound on 38th Street at around twenty-five to thirty miles per hour.[3] Officer Miller then activated his siren, turned on his spotlight, and notified communications because "[he] thought [he] was going to be in a vehicle pursuit." *Id.* at 58. However, Thomas had only driven a little over a block and turned south before she voluntarily stopped her vehicle. Officer Miller left his police car, approached Thomas, and asked her why she had driven away. She

---

[3] Though Officer Miller testified on direct examination that this was the speed at which Thomas was driving away, during a prior deposition and on cross-examination, he testified that Thomas was driving at around fifteen to twenty miles per hour. Tr. Vol. II p. 59, 70.

responded that she had told him, "I was driving my vehicle home." *Id.* at 60. Officer Miller informed Thomas that her license was suspended and ordered her out of the vehicle. Thomas became increasingly violent and belligerent towards Officer Miller, leading him to call for back-up. But before IMPD Officers Emmel and Freeman arrived to assist Officer Miller, he had handcuffed her, sat her down on the curb, and arrested her. The two back-up officers agreed with Officer Miller that Thomas's breath smelled of alcohol.

[6]     On February 11, 2017, the State charged Thomas with one count of Level 6 felony resisting law enforcement and one count of Class A misdemeanor driving while suspended. On February 13, 2017, the trial court ordered interim pre-trial release periods for Thomas so that she might self-report to community corrections to monitor her alcohol consumption. However, the State filed notices of violations of her pre-trial release periods on May 8, June 27, and August 30, 2017, and May 15 and June 14, 2018, alleging that Thomas had failed to appear for scheduled alcohol tests, had submitted multiple positive tests for alcohol, and had failed to comply with monetary obligations.

[7]     Before Thomas's July 24, 2018, jury trial, the trial court granted Thomas's motion in limine excluding any evidence about conclusions reached by Officer Miller as to whether Thomas was intoxicated on the night of the incident. The trial court shared Thomas's concerns that any conclusions about intoxication might distract, confuse, or prejudice the jury since intoxication was not relevant to any of the crimes with which she was charged. However, the order in limine

did not exclude testimony from Officer Miller about his general observations regarding Thomas's behavior, mood, or actions.

[8]     During Thomas's trial, Officer Miller testified about what happened that night. According to Officer Miller, after Thomas remained adamant about driving her vehicle home:

> I told her her vehicle was inoperable because it only had three tires so it was gonna have to be towed. It was blocking traffic too, that was another reason it had to be towed and I asked her if she thought that she had maybe too much to drink to be driving in the first place and she stated, yes.

*Id.* at 35-36. Thomas immediately objected and moved for a mistrial, contending that the State had violated the order in limine because Officer Miller concluded that Thomas was intoxicated. After some discussion, the trial court overruled Thomas's objection and denied her motion for a mistrial, holding that the order in limine had not been violated because Officer Miller made no such conclusion. Rather, Officer Miller was merely opining about Thomas's physical state and relaying to the jury how Thomas answered his questions.

[9]     After a short recess, Thomas requested that the trial court admonish the jury about not considering intoxication during deliberations. The trial court agreed and admonished the jury in the following way:

> Before we pick back up, I just want to inform you; the Defendant is not charged with being intoxicated, she is not charge [sic] with operating a vehicle while intoxicated. If you look at the elements of the crimes that she is charged with, intoxication has nothing to do with that. That's not an element. So, we just want to make sure

that's clear, that this is not a drinking and driving case, it's not a public intoxication case, you already have the list of the crimes alleged and the elements that make up those crimes.

*Id.* at 52. In response to this admonishment, one juror asked the trial court the following question: "My main question on the whole thing is if [alcohol and intoxication] keeps coming up, why was she not charge [sic] for that? Was he not following procedure?" *Id.* The trial court responded by saying that the jurors "can address that question if they choose to address that question[,]" *id.* at 53, and reassured the jury that the case had nothing to do with intoxication. Thomas renewed her motion for a mistrial, which the trial court denied.

The jury found Thomas guilty as charged. On September 25, 2018, the trial court sentenced Thomas to concurrent sentences of 730 days, with credit for 32 days and 698 days suspended to probation, for the resisting law enforcement conviction and 333 days for the driving while suspended conviction. Thomas now appeals.

# Discussion and Decision

Thomas raises two issues on appeal: (1) the trial court erred when it denied her motion for a mistrial after admitting testimony that potentially prejudiced the jury, despite the trial court's admonishment; and (2) the evidence was insufficient to support her conviction for Level 6 felony resisting law

enforcement because there was no indication that she was formally ordered to stop nor that she fled from the arresting officer.[4]

# I. Mistrial

First, Thomas argues that the trial court erred when it denied her motion for a mistrial after admitting testimony that potentially prejudiced the jury, despite the trial court's admonishment.

A mistrial is an "extreme remedy" that should be used only when no other curative measure will rectify the situation. *Moore v. State*, 652 N.E.2d 53, 57 (Ind. 1995). Upon review of a denial of a motion for a mistrial, the defendant must demonstrate that the conduct complained of was both in error and had a probable persuasive effect on the jury's decision. *Pierce v. State*, 761 N.E.2d 821, 825 (Ind. 2002). More specifically:

> [W]hen the trial court admonishes the jury to disregard the inadmissible evidence, the prejudicial impact of the evidence may be sufficiently mitigated. The question of whether a defendant was so prejudiced that the admonishment could not cure the error is one that must be determined by examining the facts of the particular case. The burden is on the defendant to show that he was harmed and placed in grave peril by the denial of the mistrial motion.

---

[4] Thomas does not argue that the evidence was insufficient to support her conviction for Class A misdemeanor driving while suspended.

*Glenn v. State*, 796 N.E.2d 322, 325 (Ind. Ct. App. 2003) (internal citations omitted). The decision to grant or deny a mistrial is within the sound discretion of the trial court, and we will reverse only when the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Stafford v. State*, 890 N.E.2d 744, 750 (Ind. Ct. App. 2008).

[14] Specifically, Thomas contends that the trial court should have declared a mistrial because the State violated the order in limine when Officer Miller testified about Thomas's behavior. Furthermore, according to Thomas, the fact that one juror appeared confused by the admonishment demonstrates that it was not enough to cure jury prejudice.

[15] The order in limine specified that Officer Miller could not make any conclusions about whether Thomas was intoxicated. However, the order did not preclude Officer Miller from testifying about Thomas's state or his general impressions of her on the night of the incident. The contested section of Officer Miller's testimony reads as follows:

> I told her her vehicle was inoperable because it only had three tires so it was gonna have to be towed. It was blocking traffic too, that was another reason it had to be towed and I asked her if she thought that she had maybe too much to drink to be driving in the first place and she stated, yes.

Tr. Vol. II p. 35-36. Officer Miller did not state that Thomas was intoxicated. Rather, he was recounting the events of that evening and describing to the jury how Thomas responded to his questions. Officer Miller's testimony reflected his general observations about Thomas's appearance and behavior and not his

specific conclusions about her intoxicated state. Accordingly, we find that the State, through Officer Miller's testimony, did not violate the order in limine.

[16] Given that there was no violation of the order in limine, no admonishment was strictly required. Nevertheless, to address concerns about jury confusion, the trial court provided an appropriate admonishment and explanation. And, the trial court's responses to the juror's question ensured that the jury understood that intoxication was not pertinent to their deliberations. As such, the trial court did not err by denying Thomas's motion for a mistrial.

# II. Sufficiency of Evidence

[17] Next, Thomas argues that the evidence was insufficient to support her conviction for Level 6 felony resisting law enforcement. Specifically, she insists that she was not ordered to stop and that she did not flee.

[18] When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not our job to reweigh the evidence or to judge the credibility of the witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

[19] To convict Thomas of Level 6 felony resisting law enforcement, the State was required to prove beyond a reasonable doubt that, while using a vehicle to

commit the offense, Thomas knowingly or intentionally fled from a law enforcement officer after the officer had, by visible or audible means—including the operation of the law enforcement officer's siren or emergency lights—identified himself and ordered the person to stop. I.C. §§ 35-44.1-3-1(a)(3), -1(b)(1)(A).

[20] A police officer's order to stop need not be audible. *Spears v. State*, 412 N.E.2d 81, 83 (Ind. Ct. App. 1980). The order to stop may be given through visual indicators. *Fowler v. State*, 878 N.E.2d 889, 894 (Ind. Ct. App. 2008). Evidence of a proper visual order to stop is based on the circumstances surrounding the incident and whether a reasonable person would have known that he or she had been ordered to stop. *Id.* at 894-95.

[21] Thomas contends that Officer Miller's use of the phrase "sit tight" did not constitute a formal order to stop because it was a mere colloquialism. However, Thomas fails to recognize that there were other indicators beyond "sit tight" that contextualized the situation. For one, Officer Miller approached Thomas's vehicle fully dressed in his uniform. *See Czobakowsky v. State*, 566 N.E.2d 87, 89 (Ind. Ct. App. 1991) (holding that "the approach of a police officer, coupled with other circumstances . . . would [] support the conclusion a visual order to stop had been given"). Officer Miller repeatedly told Thomas that her vehicle was inoperable, that she should call someone to pick her up, and that the vehicle itself needed to be towed. After multiple attempts to prevent her from driving home, Officer Miller asked for and attained Thomas's driver's license. He then told her to "sit tight" and that he would "be right back with her." Tr.

Vol. II p. 57. While running a search of Thomas's driver's license and ultimately discovering that it was suspended, Officer Miller witnessed Thomas driving away.

[22] The totality of the circumstances here created both a visual and audible order to stop. While a police officer's utterance of "sit tight" alone could be seen as ambiguous, there were numerous other actions taken by Officer Miller such that a reasonable person would have known that she was ordered to stop. A person in Thomas's position would have understood that Officer Miller's actions and words taken together—including the instruction to "sit tight"—meant that she could not leave the scene.

[23] Next, there is the question of whether Thomas fled from Officer Miller. This Court has defined "flight" to mean "a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there." *Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998). Flight is not defined by the "speed, mode, and manner of retreat[.]" *Id.*

[24] It did not matter that Thomas was only driving between fifteen and thirty miles per hour and had only driven one to two blocks from the scene. The fact is that Thomas drove away in an inoperable vehicle without her suspended driver's license after having been ordered to stop. A reasonable person in Thomas's position would have known that she could not leave, and therefore, any attempt

to leave the scene would constitute flight. Thus, there was sufficient evidence to demonstrate that Thomas, in fact, fled from Officer Miller.

[25] Accordingly, the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find Thomas guilty of Level 6 felony resisting law enforcement. In sum, the evidence is sufficient.

[26] The judgment of the trial court is affirmed.

Riley, J., and Bailey, J., concur.