

IN THE

# Court of Appeals of Indiana

**Darmon Y. Farral,**

*Appellant-Defendant*



v.

**State of Indiana,**

*Appellee-Plaintiff*



FILED

Jun 19 2025, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

June 19, 2025

Court of Appeals Case No.
24A-CR-2359

Appeal from the Marion Superior Court

The Honorable Jose D. Salinas, Judge

Trial Court Cause No.
49D23-2406-CM-17359

---

**Opinion by Judge Weissmann**
Judges May and Scheele concur.

**Weissmann, Judge.**

[1] After being arrested and handcuffed on outstanding felony warrants, Darmon Farral fled from officers before they could place him in a police car. Convicted of Class A misdemeanor resisting law enforcement, he appeals, claiming the State failed to prove officers ordered him to stop after he started to run. Farral misunderstands the elements of the offense. We affirm.

## Facts

[2] In June 2024, police officers went to an apartment complex to execute multiple outstanding felony warrants on Farral. Uniformed officers knocked on Farral's apartment door, identified themselves as police, and explained that they needed him to come out because they had warrants for his arrest. When Farral eventually emerged, an officer told him he was being arrested for the warrants and handcuffed Farral's hands behind his back. Farral told the officer that he knew about the warrants and then sighed, stating: "F***, here we go with this sh** again." State's Exh. 1, 10:11-13 (footage from officer's body-worn camera).

[3] Officers walked Farral outside to the parking lot where approximately four other uniformed officers were waiting. Farral told his girlfriend, who was standing nearby, that he loved her and asked the officers if he could kiss her goodbye. Rather than directly answering, an officer stated a few seconds later, to either Farral or another nearby officer: "Stay right here with him." *Id.* at 10:39-40. Farral remained in place.

[4] Then suddenly, Farral's girlfriend shrieked and collapsed to the ground. The next second, Farral took off in a sprint. Still handcuffed, he ran from officers for about thirty seconds before he was apprehended. Upon recapture, Farral candidly admitted he knew that he would be charged with resisting law enforcement because of his flight. He stated: "That was the dumbest sh** ever. That was stupid. Who the f*** runs from the police." *Id.* at 12:10-17.

[5] Farral was charged with Class A misdemeanor resisting law enforcement pursuant to Indiana Code § 35-44.1-3-1(a)(3) (2023).[1] Following a bench trial, the court found Farral guilty, concluding that an order to stop could be implied from the circumstances. At sentencing, the State recommended a sentence of 180 days but offered a shorter, 30-day sentence if Farral waived his right to appeal. Farral rejected this offer, concerned it punished the exercise of his appellate rights. The trial court explicitly stated it would "not take into account" the State's proposed sentencing agreement. Tr. Vol. II, p. 93.

[6] Farral was ultimately sentenced to 80 days in county jail. The execution of his sentence was stayed pending appeal, as the court found this matter was one of "first impression" and acknowledged that "the Court of Appeals may have a different opinion" on its ruling. *Id.* at 95, 84.

---

[1] This statute was amended effective July 1, 2024, one month after the incident took place. But the section at issue here—section (a) —was not affected by the amendment. We also note that this statute has been amended again, to take effect July 1, 2025. But again, that amendment does not affect section (a).

## Discussion and Decision

[7] On appeal, Farral raises two issues: (1) whether sufficient evidence supports his conviction; and (2) whether the State's proposed sentencing agreement was improper. Unpersuaded by his first argument and declining to address his second, we affirm.

## I. Sufficiency of Evidence

[8] Farral argues that the State presented insufficient evidence to support his resisting law enforcement conviction. When reviewing the sufficiency of the evidence, we consider only the evidence most favorable to the verdict and all reasonable inferences drawn therefrom without reweighing evidence or reassessing witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm the conviction "unless no reasonable [factfinder] could find the elements of the crime proven beyond a reasonable doubt." *Id.* (citation omitted). The evidence need not "overcome every reasonable hypothesis of innocence." *Id.* at 147 (citation omitted).

[9] Farral was convicted of Class A misdemeanor resisting law enforcement under Indiana Code § 35-44.1-3-1(a)(3). That statute requires proof that a person "knowingly or intentionally . . . fle[d] from a law enforcement officer after the officer ha[d], by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop." Ind. Code § 35-44.1-3-1(a)(3). Farral does not

dispute that he fled from officers who had identified themselves, but he contends the State failed to prove he was ordered to stop.[2]

[10] Farral claims that Indiana Code § 35-44.1-3-1(a)(3) requires that an officer "orders the defendant to stop *after he begins his flight and he continues to flee*." Appellant's Br., p. 7 (emphasis in original). He states: "A command to stop after the person starts to leave is an essential part of the statute." *Id.* Based on this interpretation, Farral argues that the State failed to meet its burden because the officers did not order him to stop after he began running away.

[11] Farral misreads the statute. Indiana Code § 35-44.1-3-1(a)(3) criminalizes fleeing from an officer "*after* the officer" identifies himself and orders the person to stop. *Id.* (emphasis added). Because the statute specifies that flight occurs "after" the order to stop, the order to stop necessarily must precede the flight or, if the flight has already begun, must precede the continued flight. Farral's argument that the officer must give the command after the flight has begun has no basis in the text of the statute, and he points to no caselaw to support his proposition.

[12] The record provides ample support for the conclusion that Farral was properly ordered to stop before he fled from officers. An order to stop can be verbal or visual, and "evidence of a proper visual order to stop is based on the

---

[2] Although Farral argued at trial that these facts more appropriately support the offense of escape from lawful detention, he abandons such argument on appeal.

circumstances surrounding the incident and whether a reasonable person would have known that he or she had been ordered to stop." *Fowler v. State*, 878 N.E.2d 889, 894-95 (Ind. Ct. App. 2008). Here, an officer stated, "Stay right here with him," to either Farral or another officer nearby. State's Exh. 1, 10:39-40. Regardless of whom the officer was addressing, this directive made clear that Farral was to stay put.

[13]    Additionally, the surrounding circumstances would lead any reasonable person to understand they had been ordered to stop. Farral had just been arrested, handcuffed, and escorted outside by multiple officers—clear demonstrations that he was not free to leave. Farral told officers that he was aware of his outstanding warrants, and he understood that he was being taken into custody, as evidenced by his request to say goodbye to his girlfriend. Then, upon his recapture, Farral said: "That was stupid. Who the f*** runs from the police." *Id.* at 12:10-17.

[14]    These circumstances are more than enough to constitute an order to stop. *See, e.g.*, *Conley v. State*, 57 N.E.3d 836, 838 (Ind. Ct. App. 2016) (finding hand gesture from uniformed officer constituted order to stop). And though Farral points to the absence of police sirens or lights—circumstances noted in the statute—these are merely examples and do not constitute an exhaustive list of ways a person may be ordered to stop. *See* Ind. Code § 35-44.1-3-1(a)(3) (explaining that the order to stop and the identification of officers can be by visible or audible means, "including" the activation of sirens and lights).

## II. Sentencing Agreement

[15] Farral also takes issue with the State's offer to agree to a shorter sentence in exchange for his agreement to waive his right to appeal. Farral acknowledges that he rejected this offer and that the trial court specifically stated it would not consider the proposal. Additionally, Farral makes no claim that the discussion of a sentencing agreement harmed him, and he does not challenge the 80-day sentence that the trial court ultimately imposed.

[16] Instead, Farral asks this Court for a general declaration that "any request made to a convicted Defendant to waive his appellate rights in exchange for a shorter sentence is impermissible under Indiana Law." Appellant's Br., p. 10. But because Farral rejected the State's proposal and alleges no harm to him from the mere offer, Farral essentially seeks an advisory opinion about a future, hypothetical situation unrelated to any request for relief in his case. We do not render advisory opinions. *Snyder v. King*, 958 N.E.2d 764, 786 (Ind. 2011) ("[A] cardinal principle of the judicial function is that courts should not issue advisory opinions but instead should decide cases only on the specific facts of the particular case and not on hypothetical situations."). We therefore decline Farral's invitation to speak on an issue not properly before us.

## Conclusion

[17] We find sufficient evidence supports Farral's conviction for resisting law enforcement, as he was ordered to stop before fleeing. We do not address Farral's request for an advisory opinion as to the rejected sentencing agreement.

[18]	Affirmed.


May, J., and Scheele, J., concur.


ATTORNEY FOR APPELLANT

Steven J. Halbert
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jesse R. Drum
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana