## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 29 2017, 5:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Medina Godines,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 29, 2017

Court of Appeals Case No.
45A03-1611-CR-2522

Appeal from the Lake Superior Court

The Honorable Natalie Bokota, Judge Pro Tempore

Trial Court Cause No.
45G02-1101-FC-7

**Pyle Judge.**

# Statement of the Case

[1] Christopher Godines ("Godines") appeals his conviction, following a jury trial, for Class C felony burglary.[1] Godines argues that there was insufficient evidence to support his burglary conviction. Because Godines's sufficiency argument is merely a request to reweigh the evidence and the jury's determination of witness credibility, we deny this request and affirm his conviction.

[2] Affirmed.

# Issue

Whether sufficient evidence supports Godines's Class C felony burglary conviction.

# Facts

[3] On January 25, 2011, around 3:00 a.m., Gary Police Corporal Roberto Figueroa, Jr. ("Corporal Figueroa") was dispatched to a Speedco maintenance shop to investigate a reported burglary. Upon arriving at the scene, Corporal Figueroa discovered that the window of Speedco had been broken by a cinder block that remained on the floor inside the shop. While at the shop, Corporal Figueroa reviewed Speedco's surveillance video from that evening. On the video, Corporal Figueroa saw that a white van with a luggage rack had

---

[1] IND. CODE § 35-43-2-1. We note that, effective July 1, 2014, a new version of this burglary statute was enacted and that Class C felony burglary is now a Level 5 felony. Because Godines committed his crime in 2011, we will apply the statute in effect at that time.

approached the store and that two individuals had exited the passenger side of the van, one through the front passenger door and the other through the back passenger sliding door. The video further revealed that after one of the individuals had broken the window, the other individual had entered the shop through the broken window, gone behind the counter, and searched the cash register. The video also revealed that the individual inside the shop was wearing a light-colored hoodie, gloves, jeans with a pattern on the back pockets, gym shoes with red treads, and a "do-rag" or bandana. (Tr. Vol. 2 at 107). Corporal Figueroa also saw on the video that after the two individuals had gotten back into the van, it immediately drove away from the scene.

[4] The police broadcast a description of the van, and approximately fifty minutes later, Corporal Figueroa received a call that officers had stopped a van that matched the description. The van contained three individuals, including Godines, his cousin, Nico Prince ("Prince"), and Jermaine Johnson ("Johnson"). When Corporal Figueroa looked in the passenger seat of the van, he saw items, such as the gloves and bandana, that he had seen in the surveillance video.

[5] Thereafter, the police transported Godines, Prince, and Johnson to the police station for questioning. Prince gave multiple statements to the police, including Detective James Nielsen ("Detective Nielsen"). Initially, Prince denied any involvement in the burglary. After officers told Prince that Godines had implicated him in the crime, Prince told the police that he would tell them "the real motherfuckin' story." (Ex. 2). Prince then admitted that he, along with

Godines and Johnson, had participated in the burglary of Speedco. Specifically, Prince said that he drove the van to the Speedco, Godines threw the cinder block through the window, and Johnson went into the shop. Prince told police that he was taking Godines and Johnson home when the police pulled the van over.

[6] The State then jointly charged Godines, Prince, and Johnson with Class C felony burglary. The State also charged Godines with Class D felony intimidation, alleging that he had communicated a threat to Detective Nielsen in retaliation for a prior lawful act.

[7] Shortly thereafter, in September 2011, Prince entered into a plea agreement with the State and pled guilty to Class C felony burglary in exchange for the dismissal of two Class D felonies in another cause. As part of his plea agreement, Prince agreed to testify truthfully in Godines's and Johnson's trials. Additionally, Prince's plea agreement provided that he would receive a four (4) year sentence, with all four (4) years suspended to probation.

[8] Several years later, after extended plea negotiations and several continuances by Godines, the trial court held Godines's jury trial on September 6-8, 2016. Godines's defense was that he did not participate in the burglary. During opening statements, Godines's counsel told the jury that the State's case rested predominantly with whether or not the jury would believe Prince, who had previously given "different stories" about the night of the crime. (Tr. Vol. 2 at 23).

[9] Outside the presence of the jury, the State called Prince as a witness, and he initially refused to go to the stand to testify. Once he got on the stand, he denied that he had been subpoenaed, and he told the trial court, "I ain't no witness to nothing[,]" "I ain't seen nothing, so I don't know nothing[,]" and "I ain't got nothing to say." (Tr. Vol. 25-27). When the trial court showed the subpoena to Prince, he claimed that he did not know how to read. The trial court noted, however, that Prince had made no mention of such an inability in his own criminal case. The trial court read the subpoena to Prince, and Prince told the trial court that he was not obligated to answer questions that he did not want to answer. The trial court told Prince that he was, indeed, obligated to answer questions and reminded him that it could hold him in contempt if he refused to answer.

[10] After Prince was sworn in, he denied knowing Godines or being related to him. Prince stated that he did not know why he was called to court as a witness, and he refused to answer the State's questions. When Prince stated that he did not remember if he had been charged with burglary, the State presented him with State's Exhibit 1, Prince's plea agreement and stipulated factual basis. Prince admitted that he had signed the two documents. When the State moved to admit Exhibit 1 into evidence, Prince objected to the documents based on hearsay. Prince's counsel stated that the documents themselves should not be admitted into evidence but contended that they could be used to refresh Prince's recollection. The State responded that the exhibit was admissible as a recorded recollection because Prince had testified that he did not recall the event yet had

admitted that he had signed the documents. The trial court agreed with the State that it was a past recorded recollection. The trial court also agreed with Prince that the actual documents would not be viewed by the jury, and it explained that the documents would have to be read into evidence.

[11] Thereafter, the State read the plea agreement and stipulated factual basis into evidence. The factual basis provided, in relevant part, as follows:

> . . . [O]n or about January 25th, 2011, Nico M. Prince, while acting in concert with Christopher Godines and Jermaine Johnson did break and enter the building or structure of Speedco with intent to commit the felony of theft in it.
>
> On said date, Nico M. Prince drove Jermaine Johnson and Christopher Godines to 5225 West 26th Avenue in Gary, Indiana.
>
> . . . [W]hile at that location, Christopher Godines exited the vehicle and threw a brick through the window. Jermaine Johnson then entered the building and grabbed an item from under the counter. Jermaine Johnson then lifted a cash tray out of the cash register and then exited the building through the same window and got back into the vehicle.
>
> . . . [A]ll of these actions were observed on surveillance video. In addition[,] once apprehended, Nico M. Prince admitted to officers that he was the driver of the vehicle, and the three men intended and planned to commit the robbery.
>
> . . . [A]ll of these events occurred in Lake County, Indiana.

(Tr. Vol. 2 at 47-48).

[12] When the State asked Prince about the plea agreement and factual basis, he continued to be uncooperative, denied that he had committed a burglary, and claimed that he did not know what he had signed when he signed the documents in Exhibit 1. When the State mentioned Prince's prior statements to police, he testified that he had "implicated [him]self because the police [had] lied to [him]" by telling him that his "cousin [had] rolled over on [him]." (Tr. Vol. 2 at 51). When asked if Godines was his cousin, Prince refused to answer the question. Prince also refused to answer questions about the specific facts of the crime, claiming that the questions were "irrelevant." (Tr. Vol. 2 at 52). After Prince continued to state that he did not remember his prior police statements, the State moved to play State's Exhibit 2, the videotaped recordings of his January 25, 2011 police statements, as a recorded recollection to refresh Prince's recollection. Godines stated that he had no objection, and the trial court allowed the videotaped statements to be played. Thereafter, when the State asked Prince to identify Godines in the courtroom, he refused. Ultimately, the trial court ended up finding Prince in contempt of court based on his refusal to answer questions.

[13] Corporal Figueroa also testified regarding the burglary investigation at Speedco. Additionally, the State introduced the Speedco surveillance video, State's Exhibit 27, into evidence without objection. Before closing arguments, the

State dismissed the intimidation charge due to the unavailability of Detective Nielsen.[2]

During closing arguments, Godines's counsel argued that the jury should not believe Prince's police statement, wherein he implicated Godines in the burglary. Referencing the OJ Simpson trial, Godines's counsel also argued that the jury should not convict Godines because the police had not conducted any DNA tests on the physical evidence, such as the cinder block or the bandana, and because the State did not introduce any physical evidence.

The jury found Godines guilty of burglary as charged. The trial court imposed a seven (7) year executed sentence. Godines now appeals.

# Decision

Godines argues that the evidence was insufficient to support his conviction for Class C felony burglary.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder would find the elements of the crime proven beyond a

---

[2] Detective Nielsen was unable to testify due to a medical emergency.

reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original).

[17] The battery statute in effect at the time of Godines's crime, INDIANA CODE § 35-43-2-1, provided, in relevant part, that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony." To convict Godines as charged, the State was required to prove beyond a reasonable doubt that Godines broke and entered the structure of Speedco with intent to commit the felony of theft therein.

[18] Godines contends that there was insufficient evidence to support his burglary conviction because "[t]here was no physical evidence [that] tied Godines to the scene of the crime" and because Prince, who "repudiated" his police statement, did not implicate Godines during his trial testimony. (Godines's Br. 7, 9).

[19] The State argues that Prince's factual basis (State's Exhibit 1) and Prince's police statement (State's Exhibit 2)—both of which reveal that Godines was involved in the burglary of Speedco—provided sufficient evidence to support Godines's burglary conviction. Additionally, the State asserts that this evidence was corroborated by the following circumstantial evidence: (1) shortly after the crime, Godines, Prince, and Johnson were stopped in a white van like the one

seen on the surveillance video; (2) Johnson was wearing the same clothing as the burglary suspect seen in the Speedco surveillance video; and (3) the white van contained gloves and a bandana like the ones worn by the suspect in the surveillance video.

[20]    Godines does not challenge the admission of Prince's factual basis or police statement; nor does he deny that this evidence implicates him in the burglary. Instead, he contends that the evidence was contrary to Prince's testimony that he was not involved in the burglary and that he had lied in his police statement. This argument was presented to the jury, which rejected it. Based on the jury's verdict, it is evident that it did not believe Prince's testimony that he had implicated himself and Godines in the crime only because the police had told him that Godines had "rolled over on [him]." (Tr. Vol. 2 at 51). "The factfinder is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe, and is not required to believe a witness' testimony even when it is uncontradicted." *Wood v. State*, 999 N.E.2d 1054, 1064 (Ind. Ct. App. 2013) (internal citations omitted), *trans. denied*, *cert. denied*. The evidence presented at trial and the inferences drawn therefrom were sufficient for a reasonable jury to conclude that Godines was involved in the burglary of the Speedco. Godines's challenge to the State's evidence is merely a request to reweigh the inferences made by the jury and its determination of witness credibility. We deny this request and affirm his burglary conviction. *See Ferrell v. State*, 746 N.E.2d 48, 50 (Ind. 2001) (explaining that "we look to the evidence and reasonable inferences drawn therefrom that support the

verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt").

[21] Affirmed.

May, J., and Brown, J., concur.